**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRENDA ELLIOTT,
Plaintiff-Appellant,

v.                                                                  No. 98-2346

SARA LEE CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Lacy H. Thornburg, District Judge.
(CA-96-96-5-T)

Argued: May 5, 1999

Decided: September 14, 1999

Before MURNAGHAN, LUTTIG, and WILLIAMS,
Circuit Judges.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Luttig and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Donald Joseph Willey, Jefferson, North Carolina, for
Appellant. W. R. Loftis, Jr., CONSTANGY, BROOKS & SMITH,
L.L.C., Winston-Salem, North Carolina, for Appellee. **ON BRIEF:**
Virginia A. Piekarski, CONSTANGY, BROOKS & SMITH, L.L.C.,
Winston-Salem, North Carolina, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Under the long-term disability plan of the Sara Lee Corporation, Brenda Elliott received benefits for a year due to her obesity and degenerative disc disease. After the first year of disability, Sara Lee terminated Elliott's benefits, upon a finding that she could perform some sedentary work. Elliott disagreed with the finding and instituted the instant action, alleging that Sara Lee breached its contract with her in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C.A. §§ 1001-1461 (West 1999). The district court judge affirmed Sara Lee's denial of benefits, granting the company's motion for summary judgment. Elliott now appeals. Finding no error, we affirm the district court's decision.

I.

Brenda Elliott ("Elliott") worked as a sewing machine operator at a products plant of the Sara Lee Corporation ("Sara Lee") in Jefferson, North Carolina. She worked at the plant until June 1991, when she took a medical leave of absence due to obesity and degenerative disc disease. Initially, while on leave, Elliott received either her salary or sick pay. On October 31, 1991, she applied for long-term disability benefits.

Sara Lee administers and insures its own long-term disability plan, the Hourly Piece Rate Long Term Disability Plan of Sara Lee Corporation Consumer Personal Products Group (the "Plan"). Under the Plan, the employee is entitled to benefits in her first year of disability if she is unable to perform her regular job.[1] Elliott was unable to work

_____

[1] Subsection 2.5 of the Plan provides as follows:

> 2.5. <u>Total Disability</u>. During the first year of disability, an employee shall be deemed totally disabled while he or she is unable to perform each and all of the duties pertaining to his or her occupation and not engaged in any occupation or employment for wage or profit for which he or she is reasonably qualified by education, training or experience. After the expiration of the period set forth above, "total disability" means the continuous inability of the employee to engage in each and every occupation or employment for wage or profit for which he or she is reasonably qualified by education, training or experience.

2

as a sewing machine operator, so she received benefits pursuant to the Plan beginning November 16, 1991.

After the first year of disability, the definition of "totally disabled" changes. After that first year, the employee is entitled to benefits only if she is unable to engage in "each and every occupation or employment for wage or profit for which ... she is reasonably qualified by education, training or experience." The burden of proving the disability is on the employee. Moreover, the Plan Administrator has the discretion to request that the employee submit conclusive medical evidence of the continuance of her disability and to direct the employee to submit to an independent medical examination.[2]

_____

[2] Subsection 2.7 of the Plan provides as follows:

> 2.7. <u>Entitlement to Benefits</u>. Entitlement to monthly disability benefits under the plan is subject to the following:
>
> (a) A covered employee must support his or her initial entitlement to benefits by submitting, on a form provided by the administrator, written proof covering the occurrence, character and extent of disability within the six-week period which ends with the expiration of the fourteen-week period immediately following the occurrence of disability. As requested by the administrator, it may require the employee to submit conclusive medical evidence of the continuance of his or her disability. In connection therewith, the administrator shall have the right to direct such employee to submit to an independent medical examination by a physician designated by the administrator.
>
> (b) A covered employee must be under the continuous care of a physician legally licensed to practice medicine with a defined course of treatment appropriate for the employee's disability. If an employee's disability is a mental or nervous disorder, his or her treatment must include care by a Board certified, licensed physician who specializes in psychiatric medicine.
>
> All proof submitted pursuant to this subsection must be acceptable to the administrator, which shall have sole discretion in determining the acceptability of such proof.

3

On May 14, 1992, a representative of the John Hancock Mutual Life Insurance Company ("John Hancock"), on behalf of the Plan Administrator, informed Elliott by letter of the stricter definition of "totally disabled" that would take effect once her first year of disability expired. The letter also indicated that the Plan Administrator was reevaluating Elliott's condition in light of the changed definition. Toward this end, John Hancock requested updated information on Elliott's condition from her treating physician, Dr. Glen Liesegang. Dr. Liesegang completed an Attending Physician's Statement in which he classified Elliott's physical impairment as moderate. He found that her degree of impairment was 35 to 55 percent and that she was capable of clerical or administrative activity. He indicated that he did not expect a marked improvement in Elliott's condition in the future.

Elliott's other treating physicians -- Drs. John Wolfe, William M. Smith, and Lowell Furman -- also submitted statements. Dr. Wolfe also classified Elliott as capable of clerical or administrative activity and indicated that he expected her condition to improve markedly in the future. Dr. Smith found Elliott's degree of impairment to be 60 to 70 percent. He also indicated that he expected a marked improvement in the future and believed that Elliott would be a suitable candidate for trial employment. Finally, Dr. Furman, who had not seen Elliott since August 1991, found that she had only a slight physical limitation, with a degree of impairment of only 15 to 30 percent. He concluded that she was capable of performing light manual activity. Based on these physician statements, the Plan Administrator determined that Elliott was no longer "totally disabled" under the terms of the Plan and, therefore, not entitled to benefits.

Elliott appealed the decision. In an appeal, the employee is entitled to submit additional medical evidence. Elliott submitted documentation that had previously been submitted to the Social Security Administration ("SSA") in support of her claim for Social Security Disability benefits. Included among the documentation was Dr. Liesegang's Disability Determination Evaluation in which he concluded that Elliott's "condition is disabling to 25-50% in light of her difficulty squatting and rising, sitting for prolonged periods of time, fatigue, and intense muscle tightening when doing repetitive activities." He further found that "[h]er obesity does limit her ability to stand for prolonged

4

periods of time, and probably contributes to her sense of fatigue and inability to exercise." The SSA determined that Elliott was totally disabled[3] and awarded her benefits effective December 1991.

Sara Lee arranged for Elliott to be evaluated by independent medical and psychological examiners. Dr. Earl K. Wilson, who performed the medical evaluation, found that Elliott could not perform her previous work as a sewing machine operator but indicated that she should be able to do some sedentary activity. He suggested that she would be a good candidate for vocational rehabilitation. The psychologist, Alan Galloway of the Piedmont Treatment Center in Hickory, North Carolina, also found that Elliott was capable of performing sedentary work.

Finally, Sara Lee again requested updated information from Dr. Liesegang, Elliott's treating physician. Dr. Liesegang, by letter dated August 23, 1993, stated the following:

> Mrs. Elliott's prognosis is difficult as her condition fluctuates. It is also difficult to judge when she will be able to return to full time employment. However, she may be able to perform desk work/receptionist type employment. She should avoid lifting more than 10 lbs., bending and squatting.

Sara Lee's corporate medical director at the time, Dr. Donald Hayes, reviewed the independent evaluations and the updated information from Dr. Liesegang. Dr. Hayes noted that he agreed with the conclusions of the other medical providers that Elliott could perform sedentary work. The Appeal Committee met on October 8, 1993 to review Elliott's claim and upheld the Plan Administrator's determination that Elliott was not "totally disabled" within the meaning of the Plan.

_____

**3** The SSA found that Elliott's condition qualified as a total disability under its Listing of Impairments, which awards disability benefits for obesity based upon a history of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine. 20 C.F.R. § 404, Subpart P, App. 1, § 9.09(A).

Elliott instituted the instant action on July 2, 1996 in Ashe County, North Carolina, Superior Court, alleging that Sara Lee breached its contract with her in violation of ERISA. Sara Lee removed the action to the United States District Court for the Western District of North Carolina. Upon the conclusion of discovery, both Sara Lee and Elliott moved for summary judgment. The magistrate judge hearing the case recommended that the parties' cross-motions for summary judgment be denied. Sara Lee filed objections to the magistrate's recommendation, and, on August 14, 1998, the district court judge denied Elliott's motion for summary judgment and granted Sara Lee's motion.

Elliott now appeals that decision. Because we find no error in the district court's determination, we affirm.

II.

In reviewing a district court's grant of summary judgment, we examine the decision de novo, employing the same legal standards applied by the district court. See Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997). A federal court's ability to review a discretionary decision of the administrator of an employee benefits plan is significantly limited. If "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), a reviewing court may reverse the denial of benefits only upon a finding of abuse of discretion. See id. at 111; see also Ellis v. Metropolitan Life Insurance Co. , 126 F.3d 228, 232 (4th Cir. 1997). Under the abuse of discretion standard, the administrator's decision will not be disturbed if it "`is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" Brogan, 105 F.3d at 161. In the present case, both parties agree that the Plan gives to Sara Lee discretionary authority to make eligibility determinations,[4] thus triggering an abuse of discretion standard.

_____

**4** Subsection 2.7 of the Plan expressly gives the Plan Administrator sole discretion in determining whether the employee has presented sufficient proof of disability: "All proof submitted pursuant to this subsection must be acceptable to the administrator, which shall have sole discretion in determining the acceptability of such proof."

6

Even under this deferential standard, however, "evidence of administrative bias remains relevant." De Nobel v. Vitro Corp., 885 F.2d 1180, 1191 (4th Cir. 1989). The Supreme Court has recognized that where "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a `facto[r] in determining whether there is an abuse of discretion.'" Bruch, 489 U.S. at 115. Since Sara Lee is both fiduciary of the Plan's beneficiaries and the Plan's insurer, the abuse of discretion standard must be modified to reflect the potential conflict of interest. The Fourth Circuit applies this modified standard on a case-by-case basis, deviating from the usual abuse of discretion standard of review "only to the extent necessary to counteract any influence unduly resulting from the conflict." Ellis, 126 F.3d at 233. "The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." Id.

III.

Under Sara Lee's long-term disability plan, an employee receives benefits during the first year of disability if she is unable to perform all the duties of her usual occupation. After the first year, in order to continue to receive benefits, the employee must show that she is unable to perform the duties of any occupation for which she is reasonably qualified. In accordance with the Plan, Elliott received benefits during her first year of disability, since she was unable to return to her job as a sewing machine operator. After the first year, however, Sara Lee determined that Elliott could perform some other work and was, thus, ineligible for continued benefits. Elliott maintains that Sara Lee's decision to deny her benefits is unreasonable and not supported by substantial evidence. The district court disagreed, granting Sara Lee summary judgment. Elliott contends that the judgment was improper because there remain material issues of fact in dispute.

In making its decision, Sara Lee relied in part on the opinion of Elliott's treating physician, Dr. Liesegang, that she was capable of performing sedentary work. Elliott argues that the company's findings mischaracterize the doctor's opinion. While in a letter, dated August 23, 1993, Dr. Liesegang indicated that "Ms. Elliott may be able to

7

perform deskwork/receptionist-type employment," he stated in that same letter that "[i]t is also difficult to judge when she will be able to return to full time employment." Elliott maintains that it was an abuse of discretion for Sara Lee to rely on Dr. Liesegang's single sentence regarding Elliott's ability to perform deskwork, to the exclusion of other statements that raise doubts about Elliott's capacity to work.

To the contrary, Sara Lee based its decision on a combination of medical opinion evidence, not just Dr. Liesegang's statements, indicating that Elliott was not "totally disabled" under the terms of the Plan. The medical opinions are virtually unanimous. A total of four physicians who had treated Elliott determined that she could perform some work, including occupations that involved the performance of clerical or administrative tasks. The Appeal Committee also received independent medical and psychological evaluations, which also concluded that Elliott was able to perform sedentary activities. Furthermore, on at least two separate occasions, Dr. Liesegang himself indicated that Elliott could perform some type of sedentary work. So, while Dr. Liesegang expressed some uncertainty about the timing of Elliott's return to full-time employment, that uncertainty is offset by his own assertion that she could do sedentary work and the similar assessment of other medical experts.

Even if Dr. Liesegang's report suggested that Elliott could perform no work at all, that fact would not preclude the Plan Administrator from denying benefits. The Fourth Circuit has held that it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented. See Ellis, 126 F.3d at 234 (finding no abuse of discretion in fiduciary's denial of benefits where claimant's primary medical provider's finding of disability conflicted with reports of independent panel of medical specialists); Brogan, 105 F.3d at 162-63 (affirming district court's grant of summary judgment for trustees where medical evidence was conflicting as to whether plaintiff's stroke occurred during course of employment). We, therefore, conclude that Sara Lee did not mischaracterize Dr. Liesegang's opinion and that, in any event, the company's determination that Elliott is no longer disabled is otherwise supported by substantial evidence in the record.

Notwithstanding the overwhelming evidence in support of Sara Lee's finding of no disability, Elliott maintains that her position is

vindicated by the SSA's finding that she is, in fact, disabled. See Brogan, 105 F.3d at 163 & n.6 (noting that determination of administrative law judge in state workers' compensation proceeding may be considered evidence when awarding disability retirement benefits). Recognizing that the Social Security regulatory scheme is not binding on Sara Lee, Elliott argues that the Administrator should have accorded the federal agency's disability determination greater, if not controlling, weight.

Despite our willingness in Brogan to consider as evidence the findings by an administrative law judge (ALJ) in a workers' compensation proceeding, id., our consideration here of the SSA's finding should depend, in part, on the presentation of some evidence that the "disability" definitions of the agency and Plan are similar. In Brogan, the parties disputed the timing of the claimant's disability. Id. The claimant insisted that he suffered a disabling stroke while lifting heavy oxygen tanks at work, while the trustees of the pension plan maintained that it could not be established that the stroke was work-related. Id. In its effort to ascertain whether the stroke was precipitated by a specific work event or by the claimant's other health problems, the district court relied on the ALJ's finding that the claimant had not suffered a "definite, isolated, fortuitous event." Id. The administrative finding directly addressed the contested issue in that case, so the court's reliance on it as additional evidence to support the trustees' decision was warranted. Id.

Here, however, the SSA disability determination does not necessarily directly address the contested issue before us. There is no indication that the definition of "total disability" under the Plan in any way mirrors the relevant definition under the regulations of the SSA.[5] See Boyd v. Trustees of the United Mine Workers Health & Retirement Funds, 873 F.2d 57, 58, 59 (4th Cir. 1989) (noting that Social Security disability award conclusively established medical disability under pension plan that expressly stated that employee was considered

_____

[5] Under the SSA's regulations, "disability" is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (1999).

9

totally disabled "only if ... subsequently determined to be eligible for Social Security Disability Insurance Benefits"). In fact, Sara Lee's Director of Employee Benefits, James Clousing, indicated in his sworn affidavit that "[t]here [had] been cases in which an employee was denied Social Security Disability benefits but the Appeal Committee found that the employee was entitled to Sara Lee disability benefits." Since Social Security determinations are not binding on the Appeal Committee and there is no indication that the disability standards are analogous, the Plan Administrator was under no obligation to weigh the agency's disability determination more favorably than other evidence.

We made clear in Brogan that, while the ALJ's finding could be considered as evidence, it was not determinative. 105 F.3d at 163 & n.6. In the case at bar, the Appeal Committee reviewed all the material submitted on appeal, including Elliott's award of Social Security benefits. It decided, based on the overwhelming medical evidence that Elliott could perform sedentary work, to uphold the Plan Administrator's determination of no disability. Perceiving no abuse of discretion, we cannot say that Fourth Circuit law requires anything more of Sara Lee.

Additionally, Elliott urges us to adopt the "treating physician rule" employed in evaluating Social Security Administration disability cases. The rule requires that the fact-finder give greater deference to the expert judgment of a physician who has observed the patient's medical condition over a prolonged period of time. Even if we were to apply the rule to the ERISA claim before us, which we are not persuaded to do, it only requires an award of benefits based upon a treating doctor's opinion of disability absent persuasive contradictory evidence. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986) (noting, in review of Social Security disability determination, that a treating physician's testimony is "`entitled to great weight'" and that it "is ignored only if there is persuasive contradictory evidence."). Here, such contradictory evidence exists -- namely, the indisputable professional opinions of five physicians that Elliott could perform some type of sedentary work.

Finally, Elliott maintains that the fact that the Committee made no findings as to whether or not Elliott has hand numbness, fatigue, pos-

10

tural limitations, or any functional limitations makes review of its decision impossible and remand necessary. Elliott suggests that Sara Lee had an obligation to secure evidence from a vocational consultant to determine what jobs, if any, she could perform. We disagree. Given the extensive medical record before the Appeal Committee, Sara Lee was under no obligation to secure additional vocational evidence. See Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1008 (4th Cir. 1985) (finding that plan trustees had no duty to secure evidence supporting a claim for disability benefits where they possessed reliable evidence that claimant was not disabled).

Elliott, however, was free to supplement the record. By letter dated July 16, 1992, a representative of John Hancock, on behalf of Sara Lee, informed Elliott that she could augment her claim file with additional information in order to have the decision reconsidered. Indeed, it would have behooved Elliott to do so, since, under the Plan, she bears the burden of proving her disability. Having failed to submit supplemental vocational information, Elliott cannot now prevail on an argument that Sara Lee had insufficient evidence to make a reasoned decision.

Under the circumstances, we find that an administrator, free of Sara Lee's apparent financial conflict of interest in serving as both fiduciary and insurer, would have been justified in denying Elliott benefits. Sara Lee's decision was, therefore, a reasonable exercise of its discretion. See Bruch, 489 U.S. at 111 (holding that trustee's interpretation of plan terms "will not be disturbed if reasonable"); see also Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Insurance Co., 32 F.3d 120, 125 (4th Cir. 1994) (noting that "the district court should not disturb a benefits determination by a trustee authorized to exercise its discretion unless the decision was unreasonable").

IV.

Elliott maintains that the district court erred in failing to consider the affidavit of Dr. Gary Sigmon, a vocational consultant, even though that information was not available to the Appeal Committee. Elliott submits that the evidence from Dr. Sigmon was introduced for the purpose of demonstrating the insufficiency of the evidence before the Plan Administrator and the failure of the Administrator to conduct

11

a proper review of her claim. The court, Elliott insists, should have considered the additional evidence for that limited purpose.

When a district court reviews a plan administrator's decision under the abuse of discretion standard, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time."[6] Sheppard & Enoch Pratt Hospital, 32 F.3d at 125; see also Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995). If the court believes the administrator lacked adequate evidence on which to base a decision, "the proper course[is] to `remand to the trustees for a new determination,' not to bring additional evidence before the district court." Berry, 761 F.2d at 1007 (internal citations omitted); see also Sheppard & Enoch Pratt Hospital, 32 F.3d at 125. As we have previously indicated, however, "remand should be used sparingly." Berry, 761 F.2d at 1008. Remand is most appropriate "where the plan itself commits the trustees to consider relevant information which they failed to consider or where [the] decision involves `records that were readily available and records that trustees had agreed that they would verify.'" Berry, 761 F.2d at 1008. The district court may also exercise its discretion to remand a claim "where there are multiple issues and little evidentiary record to review." Quesinberry, 987 F.2d at 1025 n.6.

We find no basis to conclude that there was insufficient evidence before the Appeal Committee. As explained above, a plan administrator is under no duty to secure specific forms of evidence. Granted, the

_____

[6] In contrast, when a district court conducts a de novo review of ERISA benefits claims, i.e., where the benefit plan does not give the administrator or fiduciary discretionary authority to determine eligibility for benefits, it may in its discretion consider evidence that was not before the plan administrator. See Quesinberry v. Life Insurance Co. of North America, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc). "The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Id. Admission of such evidence may be warranted "[i]f administrative procedures do not allow for or permit the introduction of the evidence" but not where it is merely "cumulative of what was presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review." Id. at 1027.

12

Appeal Committee's fiduciary obligations and Sara Lee's promise to pay monthly benefits to those employees deemed totally disabled under the Plan preclude the Committee from denying benefits without any evidentiary basis. See Berry, 761 F.2d at 1008. The Committee is not required, however, to secure the specific testimony of a vocational expert like Dr. Sigmon, especially where the record already contains ample and reliable medical documentation. [7] Having reviewed the unanimous evidence from both Elliott's treating physicians and independent medical examiners indicating that she is able to perform some sedentary work, the Appeal Committee rendered a reasoned decision supported by substantial evidence in the record. Since there was sufficient evidence before the Appeal Committee to make a rational decision and an adequate evidentiary record for a court to conduct a meaningful review of that decision, the district court was correct in its refusal to consider additional evidence that was not presented to the Committee. We, therefore, find no error.

V.

For the foregoing reasons, the district court's grant of summary judgment in favor of Sara Lee is

AFFIRMED.

_____

[7] Of course, Elliott had the right to supplement the record. She should have known about the vocational evidence she now seeks to introduce through Dr. Sigmon's affidavit and, if she believed consideration of it was necessary to make a correct determination, should have presented it to the Appeal Committee.