**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MEI-JONG HUNG,
Plaintiff-Appellant,

v.

No. 99-2117

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-104-S)

Argued: May 5, 2000

Decided: August 7, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Jerome B. FRIEDMAN, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Reversed and remanded by an unpublished per curiam opinion

_____

**COUNSEL**

**ARGUED:** Mark John Hardcastle, BLAIR, HARDCASTLE &
O'CONNOR, P.A., Baltimore, Maryland, for Appellant. James
Forbes Taylor, FUNK & BOLTON, P.A., Baltimore, Maryland, for
Appellee. **ON BRIEF:** Terry B. Blair, BLAIR, HARDCASTLE &
O'CONNOR, P.A., Baltimore, Maryland, for Appellant. Bryan D.

Bolton, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On December 28, 1997, Mei-Jong Hung found her husband, Dr. Chao-Huang Hung, passed out in the kitchen of their Maryland home. Mrs. Hung called for an ambulance and Dr. Hung was transported to the hospital where he underwent substantial treatment and diagnoses. On January 11, 1998, Dr. Hung died. Between December 28 and the time of Dr. Hung's death, Mrs. Hung discovered certain evidence in her home which caused her to believe that Dr. Hung suffered from an accidental death, rather than as a result of a stroke, as had been previously suspected. Mrs. Hung presented her findings and opinions to Guardian Life Insurance (hereinafter Guardian), Dr. Hung's provider for group insurance, and requested coverage under Dr. Hung's accidental death plan. Guardian reviewed the file and denied coverage.

Claiming that Guardian wrongfully denied coverage under the accidental death plan, Hung filed this action seeking review of Guardian's decision. The district court reviewed the administrative record, concluded that the plan administrator had not abused his discretion, and granted summary judgment.

Because we conclude that the plan administrator did abuse his discretion by failing to submit an adequate record to the reviewing physicians for a determination as to Dr. Hung's cause of death, we reverse and remand to the district court.

I.

On December 28, 1997, Dr. Hung collapsed on the kitchen floor of his home, and was later discovered by his wife, Mei-Jong Hung.

2

She called "911" and suggested that Dr. Hung might have suffered from a stroke. The paramedics arrived at Dr. Hung's residence and he was taken by an emergency team to a hospital where he was diagnosed with a brain hematoma and a rear skull fracture. He was thereafter transferred from the local hospital to the University of Maryland Shock Trauma Center. While Dr. Hung was hospitalized, Mrs. Hung allegedly found a fallen ladder and Dr. Hung's flip-flop sandals in the basement of their home and some rearranged Christmas decorations on a shelf six feet above the ground. She additionally found drips of blood on the ground and she discovered that Dr. Hung's eye glasses were missing a lens. Mrs. Hung claims that during Dr. Hung's hospitalization he used hand motions to communicate to her the fact that he slipped and fell in the basement. Based on her findings and communications with Dr. Hung, Mrs. Hung personally determined that Dr. Hung was injured as a result of an accidental fall from the ladder, and not from a stroke. Many tests were done between the time of Dr. Hung's hospitalization and the time of his death, January 11, 1998.

In March 1998, Dr. Hung's previous employer, Patuxent Medical Group, filed a "Proof of Death" form with Guardian claiming accidental death coverage. Pursuant to Dr. Hung's group plan with Guardian, if he suffered an "accidental death" his beneficiaries would be entitled to "two hundred percent of [his] annual earnings, rounded to the next higher one thousand dollars." Some confusion surrounds what Mrs. Hung originally understood as Guardian's response regarding her request for accidental coverage. However, Guardian ultimately notified Mrs. Hung that it would conduct an investigation into the cause of Dr. Hung's death. In April 1998, Guardian paid Mrs. Hung for "basic life benefits" and notified her that it would continue to investigate the accidental death claim. At that point Guardian's nurse, Ms. McCafferty, and doctor, Dr. Dennison, reviewed Dr. Hung's file. Dr. Dennison concluded that Dr. Hung suffered from hypertension causing a subarachnoid hemorrhage, which resulted in a head injury and eventually a stroke while he was hospitalized. Based on his conclusions, on July 20, 1998, Guardian denied Mrs. Hung's request for accidental death benefits and notified her of her right to request a review of the decision.

On September 18, 1998, Mrs. Hung requested that Guardian reconsider its denial decision and provided Guardian with her affidavit; an

3

affidavit of her daughter, Ching-Li Mera; a letter from Dr. Srinivas Mandava, the doctor who pronounced Dr. Hung dead; an affidavit of Dr. Schilder, an outside neurologist; and a letter from her attorney. Mrs. Hung's and her daughter's affidavits essentially explained their opinions that Dr. Hung fell from a ladder in his basement while wearing flip-flop sandals. Dr. Mandava's September 20, 1998, letter explained his opinion that the "probable cause of death was probably due to the head trauma and intracranial hemorrhage with subsequent cerebral swelling, leading to his coma and death, and not directly to his underlying condition of hypertension." Dr. Schilder explained his opinion, based on records provided to him by Mrs. Hung, that Dr. Hung died as a result of head trauma, not hypertension.

In considering Mrs. Hung's appeal, Dr. Dennison reviewed the medical file for a second time, and also reviewed the new information submitted by Mrs. Hung. Guardian additionally sought an outside medical review of its previous determination. Specifically, Dr. Schuster, an outside neuroradiologist, was directed to review the medical records. Notably, Dr. Schuster was not provided with the affidavits and letters submitted by Mrs. Hung. However, based on the medical records supplied to him by Guardian, Dr. Schuster concluded that Dr. Hung's cause of death was a stroke.

On November 30, 1998, Guardian notified Mrs. Hung that it had completed its review of her appeal. Guardian explained that based on its review and the review of Dr. Schuster, the independent physician, it concluded that its original denial of accidental death benefits was appropriate, as Dr. Hung's death was a result of an underlying disease, hypertension, and not a result of an accident.

Following Guardian's denial of the appeal, Mrs. Hung filed suit in Maryland State Court. Guardian removed the action to federal court under Employment Retirement Income Security Act (ERISA). The district court determined that review was appropriate on the administrative record before the decisionmaker at the time of the challenged decision. The court concluded based on the record that the administrator had not abused its discretion in denying the claim, and as a result it granted the defendant's motion for summary judgment. Based on the district court's rulings, Mrs. Hung filed this appeal.

II.

A District Court's grant or denial of summary judgment is reviewed de novo. Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir. 1996); see also Ellis v. Met. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). ERISA plans, as contractual documents, must be reviewed de novo by the Court to determine the degree of discretion afforded to the plan administrator. Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000). When the plan confers discretion on a fiduciary and the fiduciary acts with the scope of that conferred discretion, the principles of trust law apply, and a fiduciary's "exercise of power is not subject to control by the court except to prevent an abuse by the trustee of his discretion." Id. (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)). Thus, the fiduciary's "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." Booth , 201 F.3d at 341; Elliott v. Sara Lee Corp., 190 F.3d 601 (4th Cir. 1999); Haley, 77 F.3d at 89. In general, "a decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Ellis, 126 F.3d at 233 (citations omitted). "[A] denial decision must be reviewed for abuse of discretion." Elliott, 190 F.3d at 606; see also Booth, 201 F.3d at 341-42 (distinguishing the abuse of discretion standard and arbitrary and capricious standard of review).

The fact that a fiduciary acts under a conflict of interests must be considered in reviewing the decision and determining whether the discretion was abused. Booth, 201 F.3d at 342 (citing Firestone, 489 U.S. at 115). In addition to many factors relevant to determining whether an abuse of discretion occurred, the court must determine whether the record before the decisionmaker was adequate, and whether the materials before the fiduciary support the challenged decision. Booth, 201 F.3d at 342 (citing Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995)) (listing factors to be considered when reviewing a fiduciary's discretionary decision).

With these standards in mind, the Court must review the Guardian plan, and Guardian's decision to deny accidental death benefits. The Court reviews the fiduciary's decision, as the district court did, to determine whether the fiduciary abused its discretion. The Court

5

applies the "modified abuse of discretion standard," which requires the court to weigh the factor of the conflict in its decision to determine whether the administrator abused its discretion. Ellis, 126 F.3d at 233. The Court must determine based on its review of the administrative record before the fiduciary at the time of decisionmaking whether the administrator's decision is consistent with a decision that might have been made by a fiduciary acting free of the interests which conflict with those of the beneficiaries. Id. (quoting Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996)).

Additionally, the District Court properly limited its review to the administrative record before the administrator at the time of decision-making. See Elliott, 190 F.3d at 606 (limiting scope of review to administrative record); Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1026 (4th Cir. 1993) (limiting scope of review to administrative record and applying de novo review standard).[1] To determine whether an abuse of discretion occurred, the court must consider the facts before the decisionmaker at the time of decisionmaking. Elliott, 190 F.3d at 606; Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 124-25 (4th Cir. 1994).

III.

From the record before the Court, it appears that Guardian's initial decision was based on the following facts: (1) Dr. Hung's death certificate indicated stroke as the immediate cause of death, JA 239; (2) the CT scan performed on Dr. Hung while he was hospitalized prior to his death (reported by Dr. Moss) concluded that Hung had three hemorrhage lesions, at least two of which were not commonly associated with trauma, and as a result, Dr. Moss suspected that the lesions were present at the time Dr. Hung fell, JA 389-90; (3) Dr. Hung's hospital records indicate that Dr. Hung was hypertensive, and that he

_____

[1] The plaintiff contends that "it is difficult to discern" what modifications the District Court made to compensate for the conflicted administrator regarding the medical evidence presented by both parties and that the district court should have made a de novo review of the medical evidence. However, this Circuit does not require de novo review by the district court. See Doe v. Group Hospitalization and Med. Serv., 3 F.3d 80, 87 (4th Cir. 1993).

6

suffered from high blood pressure and headaches prior to falling (all indicators for a stroke); and finally, (4) Dr. Dennison, a physician for Guardian, reviewed the records and concluded that "[h]ypertension caused a hypertensive subarachnoid hemorrhage that subsequently lead to a fall to the floor resulting in head injury-- contusion and hematoma -- a major in-hospital stroke days later was the terminal/final event." He further concluded that in his opinion, "the fall was the result of a neuro insult, i.e., the hypertensive subarrachnoid bleed."

On Mrs. Hung's appeal, Dr. Dennison, Guardian's physician, reviewed the evidence outlined above, and additionally reviewed the information submitted by Mrs. Hung (the affidavits and letters). Dr. Dennison acknowledged that the information provided by Mrs. Hung supported a conclusion that head trauma was the "direct cause" of Hung's death, but noted that hypertension was the cause of the head trauma; not an accidental fall. Nevertheless, Dr. Dennison recommended an outside medical review. As a result, Guardian contracted with an independent neuroradiologist, Dr. Schuster, to review Dr. Hung's medical records.

It is Dr. Schuster's review and Guardian's failure to provide Dr. Schuster with the documentation submitted by Mrs. Hung that makes Guardian's review of Mrs. Hung's appeal incomplete. Specifically, Dr. Schuster was provided with only the "medical records." Guardian did not provide Dr. Schuster with the affidavits and letters submitted by Mrs. Hung.

Based on the medical records alone, Dr. Schuster concluded that Dr. Hung had an "underlying process in the cerebral hemispheres of his brain" that resulted in hemorrhages and that the hemorrhages caused Hung to lose consciousness and collapse. Dr. Schuster concluded that the impact of the fall caused a fracture to the occipital bone in Hung's head. However, he further concluded that the hemorrhages were unrelated to the fall, but likely caused the fall, and that the skull fracture resulting from the fall was the direct cause of death. Based on Dr. Schuster's opinion, Guardian confirmed its initial decision to deny accidental death coverage.

Because Dr. Schuster's opinion was the primary basis for Guardian's decision on appeal, and because Dr. Schuster was not provided

7

an entire set of facts and circumstances surrounding Dr. Hung's death, under the modified abuse of discretion standard applicable in this case, the Court cannot find that the record contains adequate information to support Guardian's decision. Cf. Booth , 201 F.3d at 343 (upholding finding of the Administrative Committee in part based on thorough review of numerous independent doctors' opinions and letters); Ellis, 126 F.3d at 230-31 (considering evidence submitted by independent doctors). It is not an abuse of discretion for an administrator to come to one decision, rather than another, where there is conflicting medical evidence in the record. Elliott , 190 F.3d at 606 (citing Ellis, 126 F.3d at 234) (affirming summary judgment decision where there was conflicting medical evidence as to whether there was a disability). Rather, decisions are often upheld where there is conflicting medical evidence and it is clear from the administrative record that the administrator fully considered both opinions. See Booth, 201 F.3d at 345 (citing Elliott, 190 F.3d at 606); Brogan v. Holland, 105 F.3d 158, 163 (4th Cir. 1997) (affirming district court's grant of summary judgment where medical evidence was inconsistent as to whether stroke occurred during course of employment).

However, in this case, the problem arises because the allegedly conflicting evidence was not presented to the independent medical expert employed to review the file and offer an opinion as to Dr. Hung's cause of death. Because a substantial portion of the relevant evidence was withheld from the independent reviewing neuroradiologist, Guardian's conclusions based on Dr. Schuster's opinion is necessarily called into doubt and unreliable. While Guardian may have considered the information submitted by Mrs. Hung in its reassessment of her claim, its consulting physician undisputedly did not.**2** This obvious flaw in Guardian's review process and decisionmaking regarding Mrs. Hung's claim requires remand to Guardian for a new determination based on a complete record, which necessarily includes the information submitted by Mrs. Hung. See Elliott, 190 F.3d at 609 (citations omitted); see also Sheppard, 32 F.3d at 125. Guardian's referral of Dr. Hung's medical record to Dr. Schuster was incomplete

_____

**2** Mrs. Hung's other arguments on appeal related to the alleged impropriety of Guardian's review of her claim and the district court's denial of the motion to amend need not be specifically addressed herein based on the decision of the Court that the record reviewed was incomplete.

8

in the absence of the documentation submitted by Mrs. Hung, and as a result, reconsideration is required. See Elliott, 190 F.3d at 609.

Accordingly, we reverse the grant of summary judgment by the district court and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED

9