**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-1168**

_____

E. THOMAS BYRD, JR.,

Plaintiff - Appellant,

versus

CANADIAN IMPERIAL BANK OF COMMERCE; CIBC WORLD
MARKETS,

Defendants - Appellees.

_____

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (CA-04-783-23-2)

_____

Argued:  October 26, 2005          Decided:  December 9, 2005

_____

Before WIDENER, MOTZ, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Stanley Eugene Barnett, SMITH, BUNDY, BYBEE & BARNETT,
P.C., Mount Pleasant, South Carolina, for Appellant.  Amy Yager
Jenkins, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Charleston,
South Carolina, for Appellees. **ON BRIEF:** W. H. Bundy, Jr., SMITH,
BUNDY, BYBEE & BARNETT, P.C., Mount Pleasant, South Carolina, for
Appellant.  Stephanie E. Lewis, NELSON, MULLINS, RILEY &
SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Thomas Byrd, who prior to becoming disabled, participated in his employer's deferred compensation plan, brings this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 (West 1999). Byrd contends that his employer wrongfully denied him a benefit guaranteed by that plan.[1] The district court disagreed, entering summary judgment on behalf of Byrd's employer. Finding no error, we affirm.

I.

In March 1999 Canadian Imperial Bank of Commerce ("CIBC") recruited Byrd, a securities broker then employed at Prudential Securities, to become an Executive Director in the Private Client Division of CIBC Oppenheimer Corp. The employment offer provided that Byrd would receive a 40% commission payout for the first 12 months of his employment (with normal commission rates thereafter), an additional bonus if the assets under his management reached $76 million during his first 12 months of employment, and -- importantly for this case -- an "up-front loan of 50% of [his] proven trailing-12 months commissions in the form of a five year forgivable loan." This employee forgivable loan totaled $664,000,

---

[1]Byrd's amended complaint originally alleged eight counts, including breach of contract, fraud, estoppel, breach of fiduciary duty, refusal to provide information, and wrongful denial of benefits. Only the wrongful denial claim remains at issue on appeal.

2

and would be forgiven in five equal increments of $132,800 per year.

On November 16, 2000, CIBC informed Byrd that he was eligible to participate in the Company's Wealth Plus Plan ("WPP" or "the Plan"), a "long-term wealth" accumulation plan that allowed account executives to earn deferred compensation based on their "performance and business-building." Each participating executive possessed a WPP account. CIBC credited funds to that account over time if the employee met certain performance targets. The funds vested according to specific rules set out in the WPP, but employees were generally not able to withdraw those funds until they had retired, were terminated, or had experienced severe financial hardship.

One of the WPP credits CIBC provided -- the credit central to this case -- was the "Firm Initial Credit." That credit rewarded an employee by depositing "an amount equal to 20%" of the employee's annual compensation into his account. If an employee received a "Special Payout Arrangement," however, the Plan provided that CIBC would not award this Firm Initial Credit until the "expiration" of the "Special Payout Arrangement." The WPP defined a Special Payout Arrangement as "any individual [Account Executive] payout arrangement specifically negotiated by said individual that provides a payout in excess of the Firm's Standard Commission Payout Policy."

3

At issue in this case is whether Byrd's employee forgivable loan constituted a "Special Payout Arrangement" that disqualified him, under the terms of the WPP, from receiving the Firm Initial Credit. Byrd, whose rights under the WPP have fully vested now that he has become disabled,[2] asserts that the employee forgivable loan did not disqualify him from receiving the Firm Initial Credit. Byrd contends that the word "payout" in the Plan refers only to commissions, and hence does not extend to the forgivable loan, which he maintains was more in the nature of a signing bonus. Hence, he contends that he is entitled to the Firm Initial Credit under the WPP's plain language.

CIBC counters that the WPP's plain language supports its view because "[r]eferences to 'any' payout . . . clearly could be construed to include the $664,000 EFL [employee forgivable loan] given to Byrd at the time of hire." CIBC also notes that it has consistently interpreted the WPP to deny the Firm Initial Credit to employees with outstanding forgivable loans; the first letter notifying Byrd of his eligibility to participate in the WPP informed him, "[a]s a result of having an up-front forgivable loan, the initial firm contribution is not credited to your account balance until the loan has expired."

---

[2]Byrd suffers from a degenerating eye disease. CIBC's long term disability insurance carrier confirmed his disability on December 5, 2002.

4

II.

The district court began its analysis by noting that it is undisputed that the WPP is an ERISA plan within the meaning of 29 U.S.C. § 1002(1)(A). The court then recognized that the WPP gave CIBC's WPP Committee, as the plan administrator, discretionary authority to interpret the WPP. In light of this discretion, the court noted that it could review the administrator's interpretation of the plan only for abuse of discretion, see Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997), and it found no abuse of discretion in the administrator's decision here. Alternatively, the district court held that even if it "were to employ a de novo standard of review," it would reach the same conclusion, i.e., grant summary judgment to CIBC.

The court explained that the Plan language was "broad" and it "could think of no plausible reason why a forgivable loan issued to [Byrd] that was clearly in excess of his standard commission would not fall within" the Plan's definition of a Special Payout Arrangement. The court concluded that Byrd's contrary interpretation of the Plan "forces a strained reading of the special payout provision, particularly given the evidence that within the brokerage community, the term 'special payout arrangement' commonly includes forgivable loans." Byrd now appeals.

III.

We review the grant of summary judgment <u>de novo</u>, "employing the same legal standards applied by the district court." <u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 605 (4th Cir. 1999). After careful review of the record, the parties' briefs and oral arguments, and the relevant case law, we affirm on the reasoning of the district court. Like the district court, we find CIBC's interpretation of the plan correct, no matter what standard of review is applied. We agree that the Plan's language unambiguously excludes recipients of employee forgivable loans from eligibility for receipt of the Firm Initial Credit; there is no reason not to construe the up-front cash payment to Byrd as anything other than a "payout in excess of" the standard commission policy. Under the plain language of the Plan the employee forgivable loan therefore disqualified Byrd from receiving the Firm Initial Credit.

For these reasons, the judgment of the district court is

<u>AFFIRMED</u>.