**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1390

ELLSWORTH LARSON,

Plaintiff - Appellant,

v.

OLD DOMINION FREIGHT LINE, INC., Employee Benefit Plan;
BENEFIT MANAGEMENT SERVICES, INCORPORATED,

Defendants - Appellees.

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  James A. Beaty, Jr., Chief
District Judge.  (1:06-cv-00328-JAB)

Argued:  March 20, 2008

Decided:  May 13, 2008

Before WILKINSON and KING, Circuit Judges, and C. Arlen BEAM,
Senior Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

John Kenneth Koontz, LEWIS & DAGGETT, P.A., Winston-Salem, North
Carolina, for Appellant.  Andrew Sampson Lasine, KEZIAH, GATES &
SAMET, High Point, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this ERISA case, the district court dismissed Ellsworth Larson's claim challenging Old Dominion Freight Line's termination of Larson's long-term disability benefits. After careful consideration, we affirm the district court.

I.

Old Dominion Freight Line, Inc., ("Old Dominion") provides long-term disability benefits to qualified participants through its employee benefit plan (the "Plan"). Plan participants are eligible for long-term disability benefits if they are "totally disabled." The Plan defines total disability as follows:

> Total disability, as it applies to this benefit, shall mean that you are prevented solely by an <u>illness</u> or <u>injury</u> from performing the regular and customary duties of your employment. You do not have to be confined to your home, but must be under the regular and continuing care of a <u>physician</u>. Beginning 24 months after the disability began, to be considered to be totally disabled, you must not be able to engage in any gainful occupation for which you are reasonably qualified by education, training or experience.

In addition, the Plan gives the plan administrator, in this case, Old Dominion, "sole discretionary authority to determine eligibility for plan benefits."

Ellsworth Larson was an Old Dominion truck driver for over twenty years, and thus a Plan participant. In December 2001, Larson reported experiencing significant lower back and right leg pain. An MRI showed a herniated disc and epidural fibrosis (scar

2

tissue around the nerves in the back), and Larson subsequently filed a disability claim. Larson thus started to receive long-term disability benefits under the Plan.

In early 2004, because two years had passed since Larson first reported his back injury, the requirements for receiving long-term disability benefits under the Plan changed. Benefit Management Services, Inc. ("BMS"), hired by Old Dominion as the Plan's claims administrator, thus decided to reevaluate Larson's level of disability. Although Larson's treating physician continued to believe that Larson was unable to perform any work, partly because of Larson's self-reported levels of pain, a functional capacity evaluation ("FCE") and an independent medical examiner both found that Larson was capable of sedentary employment. BMS therefore notified Larson via letter that his benefits were being terminated effective September 30, 2004.

Larson, through counsel, subsequently requested the documentation supporting the benefit termination, and BMS sent Larson a copy of his FCE and the independent medical examiner's report. Larson then appealed the termination decision. At this time, Larson supplemented the record with a sworn affidavit in which he claimed that he does not do "any bending or stooping" and that the "only thing" he was able to carry at the grocery store was "something light like a loaf of bread."

In the course of considering this appeal, BMS arranged for video surveillance of Larson. In March 2005, three weeks after Larson filed his affidavit, Larson was taped picking up large, heavy bags of fertilizer at Lowe's, loading them into his vehicle, unloading and carrying them, pouring the contents into a spreader, walking behind the spreader for two hours, and stooping to move objects as needed. Larson did not limp or otherwise show limited mobility while performing this yard work.

In April 2005, BMS sent Larson a letter notifying him that his appeal had been denied. Larson's counsel requested the documentation relied upon to deny the appeal, and thus learned about the video. Larson then filed a second appeal, supplementing his file was a second sworn affidavit and a note from his treating physician. Both Larson's affidavit and his physician's note emphasized that Larson's back pain ebbed and flowed, and that, even if he was at times able to engage in strenuous work for a couple of hours, he was still unfit for any form of meaningful employment.

In December 2005, Larson's second appeal was denied. Unlike Larson's two previous denial letters, which came from BMS, this letter came from Old Dominion's Director of Employee Benefits. The letter lays out in detail the basis for the benefits termination: Larson's performance on the FCE, the independent medical expert's opinion, and the surveillance video. The letter also considers the opinion of Larson's treating physician, stating that Old Dominion

4

did not find the treating physician's assessment dispositive, since it was at least partly based on Larson's self-reports of pain -- self-reports that were brought into question by the surveillance video.

In April 2006, Larson filed a complaint against Old Dominion and BMS (collectively, "the defendants") in the Middle District of North Carolina pursuant to the Employee Retirement Income Security Act ("ERISA"). Larson argued that the defendants failed to provide a full and fair review of his claim on appeal, and that the defendant's denial of his benefits was unreasonable.

The parties filed cross-motions for summary judgment, and, in February 2007, a magistrate judge issued a lengthy opinion recommending that the defendants' motion be granted and Larson's motion be denied. Larson filed several objections to the magistrate's report, and, after reviewing Larson's objections and the magistrate's recommendations, the district court made a de novo determination to dismiss Larson's claim with prejudice. Larson subsequently filed a timely appeal, which we now review.

II.

As a threshold matter, the parties disagree as to the appropriate standard of review. We need not resolve this question because, for the reasons stated, the administrator's rejection of Larson's claim would be sustained under any standard.

5

A.

First, Larson contends that the process underlying the defendants' termination decision was flawed. As evidence of this, Larson points to the fact that the defendants failed to comply with ERISA's procedural requirements. In particular, Larson argues that the defendants failed to disclose information related to his claim, see 29 C.F.R. § 2560.503-1(h) (2007), and to provide sufficient notification of the reasons for the denial of his appeal, see id. § 2560.503-1(j). In addition, Larson also argues that the defendants improperly "afford[ed] deference to the initial adverse benefit determination" in denying his appeals. Id. § 2560.503-1(h)(3)(ii).

We reject Larson's arguments. As the magistrate judge recognized in his opinion, it is well-established that failure to technically comply with all of ERISA's procedural requirements does not automatically invalidate an otherwise sound denial of benefits. See, e.g., Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 238 (4th Cir. 1997); Brogan v. Holland, 105 F.3d 158, 165 (4th Cir. 1997). "Substantial compliance" is typically sufficient. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 127 (4th Cir. 1994) (internal quotation marks omitted). To substantially comply with ERISA's regulations, an administrator must supply the claimant "with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear

6

understanding of the administrator's position to permit effective review." Brogan, 105 F.3d at 165 (internal quotation marks omitted).

In this case, the defendants complied with this standard. Even if BMS's letters terminating Larson's benefits and denying Larson's first appeal were insufficient, Larson was provided with all information relevant to his claim on request. Furthermore, Old Dominion's letter denying Larson's second appeal thoroughly outlined Old Dominion's reasons for affirming the prior termination decision.

We thus conclude that Larson possessed a "sufficiently clear understanding of the administrator's position," and that he was therefore able to effectively appeal his benefits termination. Indeed, Larson filed two lengthy administrative appeals, and does not bring to our attention any information that he would add to the administrative record before us.

Likewise, there is nothing in the record other than Larson's conclusory assertion indicating that the defendants improperly "defer[red] to the initial adverse benefit determination." Rather, Old Dominion's analysis and statements in the letter denying Larson's second appeal indicate that Larson's claims were given a fresh look. Larson has simply not shown that the defendants committed any procedural errors that warrant even a remand.

B.

Second, Larson also claims that the defendants substantively erred in terminating his benefits. To support his claim, Larson contends that the defendants both undervalued the evidence supporting his claim -- chiefly, the MRI results, the opinion of his treating physician, and his self-reports -- and overestimated the importance of the FCE and the surveillance video. In particular, Larson argues that the FCE and the surveillance video only provided a "snapshot" of his true abilities, and that this is insufficient to terminate his benefits. See Stup v. Unum Life Ins. Co., 390 F.3d 301, 309-11 (4th Cir. 2004) (FCE); Hines v. Unum Life Ins. Co., 110 F. Supp. 2d 458, 463-64 (W.D. Va. 2000) (surveillance video).

We again disagree. It is not error for a plan administrator to deny benefits when conflicting evidence is presented. See Elliott v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999). While Larson's MRI results support the opinion of his treating physician, an independent medical examiner looked at the same MRI results and concluded that Larson could perform sedentary work, and an ERISA plan administrator is not required to show a treating physician any special deference. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Moreover, the other evidence in the record -- specifically, the FCE and the

surveillance video -- strongly supports Old Dominion's determination.

As the magistrate judge emphasized, the surveillance video is particularly damaging to Larson's claim.* As noted, the video showed Larson carrying heavy bags, performing two hours of yard work without a limp, and stooping to move objects as needed. Not only does this video demonstrate that Larson can engage in physical activity far more strenuous than sedentary employment, but it also directly contradicts Larson's sworn affidavit submitted with his first appeal. This calls into question the credibility of Larson's self-reports of pain. Given this video, and the other evidence in the record, we conclude that Old Dominion's position is soundly based, and that Old Dominion therefore did not err in denying Larson's claim.

III.

For the foregoing reasons, we find that Old Dominion's decision to terminate Larson's benefits was both procedurally and

---

*Larson argues that the defendants initiated surveillance without sufficient justification. We disagree. As defendants argue in their brief, Larson's affidavit accompanying his first administrative appeal contained strong statements about his level of disability (unable to lift anything more than a loaf of bread, cannot stoop, etc.). It cannot be unreasonable for an administrator to want verification before taking such statements at face value, particularly when they are a vital part of the claimant's evidence of disability.

substantively proper.  We thus dismiss Larson's claim with prejudice.  The judgment of the district court is

AFFIRMED.