**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM J. ELMORE, Individually;
WAYNE COMER, Individually and as
representatives of a class of
Plaintiffs similarly situated,
Plaintiffs-Appellants,

v.

CONE MILLS CORPORATION,
Defendant-Appellee,                                    No. 95-2901

and

DEWEY L. TROGDON; LACY G.
BAYNES; PAUL W. STEPHANZ; CONE
MILLS ACQUISITION CORPORATION;
WACHOVIA BANK AND TRUST
COMPANY, N.A.,
Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Joseph F. Anderson, Jr., District Judge.
(CA-88-3258-6-17)

Argued: October 31, 1996

Decided: August 20, 1999

Before WIDENER, Circuit Judge, HALL,* Senior Circuit Judge,
and THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

*Senior Judge Hall heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

Affirmed by published per curiam opinion.

_____

## COUNSEL

**ARGUED:** James Robinson Gilreath, Greenville, South Carolina, for Appellants. John Robbins Wester, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee. **ON BRIEF:** J. Kendall Few, Greenville, South Carolina; John P. Freeman, Columbia, South Carolina, for Appellants. David C. Wright, III, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina; Robert O. King, Kristopher K. Strasser, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, L.L.P., Greenville, South Carolina; Robert J. Lawing, Jane C. Jackson, ROBINSON, MAREADY, LAWING & COMERFORD, Winston-Salem, North Carolina, for Appellee.

_____

## OPINION

PER CURIAM:

Plaintiffs William Elmore and Wayne Comer, individually and as representatives of a class of employees of defendant Cone Mills, appeal a decision of the district court in South Carolina entering judgment for the defendant and denying the plaintiffs' claims to a pension surplus governed by ERISA under federal common law theories of equitable estoppel, third-party beneficiary of a contract, and unjust enrichment. At issue is a $14.2 million portion of the surplus of an Employee Retirement Plan (ERP) which Cone Mills over-funded. Plaintiffs claim officers of Cone Mills represented Cone Mills' management would contribute the whole surplus to a new Employee Stock Ownership Plan (ESOP) if management succeeded in its leveraged buy-out of the company. Plaintiffs assert that Cone Mills only contributed about $54.8 million by 1985, and that under the foregoing theory they are entitled to recovery of the remainder of a $69 million surplus.

2

This is the third time this court has heard this case.[1] As a divided en banc court we vacated a panel decision and vacated an earlier district court decision in favor of the plaintiffs on their claim that Cone Mills had breached its fiduciary duty in contravention of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. Elmore v. Cone Mills Corp. , 23 F.3d 855 (4th Cir. 1994) (en banc). However, by an evenly divided court, we upheld the district court's determination that plaintiffs might be able to establish equitable estoppel, subject to proof of detrimental reliance. Elmore, 23 F.3d at 863. We did not reach the issue of breach of a third-party beneficiary contract and we affirmed the district court's dismissal of "all remaining ERISA and other claims." Elmore, 23 F.3d at 858, 863.

On remand the district court permitted the plaintiffs to amend their complaint to add a claim for unjust enrichment, premised on a federal common-law theory under ERISA. The district court held that the plaintiffs' failure to establish either reasonable reliance or detrimental reliance, prerequisites for specific performance under notions of equitable estoppel or third-party beneficiary, required denial of those theories of recovery. Subsequently, the district court heard the unjust enrichment claim and denied recovery, finding that Cone Mills was not unjustly enriched where the pension plan and ERISA entitled Cone Mills to the surplus pension funds at issue.

The plaintiffs now appeal, asserting that they established the reliance necessary for their theories of equitable estoppel and third-party beneficiary. They claim that the district court's decision for the defendant on the issue of reliance is based on facts contrary to those found in the initial trial and affirmed by this court en banc. Additionally, they assert that reliance is not required for restitution under unjust enrichment, and that the plaintiffs had a reasonable expectation that the full pension reversion would be contributed to the surplus.

Our review is of these two issues, and we affirm the judgment of the district court.

---

[1] For the purposes of this appeal we permitted the use of the 17-volume Joint Appendix from the previous appeal. For completeness we note that the vacated panel decision is reported as 6 F.3d 1028 (4th Cir. 1993).

3

I.

The district court in its first opinion set forth the underlying events, and we found the operative facts from that narrative in our en banc opinion. Elmore, 23 F.3d at 855, 858-860. We confine our discussion to the facts central to the issues before us, reliance and unjust enrichment.

In order to fend off a hostile takeover bid announced on October 31, 1983, a group of senior management employees at Cone Mills organized a leveraged buy-out (LBO) of the company, which became final on March 27, 1984. At that time Dewey Trogdon was Cone Mills' Chairman of the Board and Chief Executive Officer. During the months preceding the LBO Trogdon engaged in regular communication with the employees of Cone Mills to keep them apprised of the situation and to obtain their support for the LBO. Through letters, office memoranda and video presentations Trogdon addressed employee concerns, in particular those regarding the effect of the LBO on their pensions.

Our en banc opinion focused on the contents of six of these pre-LBO communications. They are summarized as follows.

A December 12, 1983 letter to all Cone Mills employees explained that the LBO would include an Employee Stock Ownership Plan (ESOP) which would not diminish their pensions. It provided that "pension plans [would] be left in place with existing benefits guaranteed by the company" and that the combination of the new ESOP and the ERP would ensure employees "receive no less than the full amount" of their pre-LBO pension benefits. The letter further stated that "[t]ogether, the ESOP and your pension plan are expected to provide greater financial security than your present retirement benefits." (emphasis omitted). The letter "estimated" that the company could contribute over $50 million in stock to the new ESOP, but Trogdon made the express reservation that "[a]t this time I am not allowed to legally guarantee that amount, nor will it be the same amount in future years." A.J.A 3696.

A December 15, 1983 letter from Trogdon to salaried employees further detailed the proposed LBO. The letter stated that the existing

4

ERP contained a surplus because the company had contributed more funds than were necessary to pay for the accrued benefits. It referred to the fact that under the terms of the ERP Cone Mills was entitled to reclaim this pension surplus. However, the letter provided:

> [i]f the management and the bank proposal to buy the Company is successful, there is agreement among management and the banks that we will contribute the surplus, or its equivalent in Company stock to the ESOP. When the transaction is executed and the contribution is made you, I, and all other Cone employees will "take title" to a substantial asset in which we currently have no rights or ownership.

Trogdon qualified this statement with a disclaimer.

> As we get more time, we will answer your questions and publish information to the extent that it can be done on a legal and factual basis. We are, however, giving you information based on our present plans which are subject to revision to meet changing situations.

A bulletin board notice followed the letters. It outlined how Cone Mills' planned contributions to the ESOP would be 10% of salaries paid in both 1983 and 1984, and 1% per annum thereafter. The notice stressed the discretionary nature of any additional contributions.

A February 1984 video presentation referred to the expected contribution as "over $50 million."

The question-and-answer booklet which accompanied the video similarly estimated that

> if all goes according to plan, over $50 million of stock will be contributed to the ESOP for the years 1983 and 1984. After 1984 the company's contribution will be determined by the board of Directors based on business conditions and company profits.

Like all the prior communications the pamphlet contained a disclaimer, this time in bold-face type, stating that

5

> [t]he legal documents control, and if this material differs in any way from the legal documents, the correct source of the information is the legal documents.

A February 23, 1984 proxy statement provided to all salaried employees as participants in the employee stock ownership plan (PAYSOP) outlined that the mandatory ESOP obligation of Cone Mills would follow the 10%/10%/1% formula.

A March 15 memorandum, less than two weeks before the LBO vote, cautioned that the company was not making any guarantees as to its contributions to the ESOP after 1985, other than the minimum required by the plan. Trogdon wrote "I do not believe it is prudent, presently, to guarantee ESOP contributions above the 1% minimum for years 1985 and forward. . . ." A.J.A at 4034.

The salaried employees who received these communications owned a total of 1.3% of Cone Mill's common stock. The plaintiffs assert that as a result of these communications the salaried employees voted for the LBO, which was overwhelmingly adopted on March 26, 1984.

On April 2, 1984 the 1983 ESOP documents were executed. They obligated the company to contribute cash, stock, or other property equivalent in value to ten percent of each participating employee's compensation in 1983 and 1984. Thereafter, according to the 10%/10%/1% formula, the documents required a contribution of one percent of each covered employee's compensation. As the en banc opinion noted, the documents "did not refer to the pension surplus but did provide for discretionary contributions." Elmore, 23 F.3d at 860.

Cone Mills received the pension surplus between May, 1985 and December, 1985. During that time the surplus had increased to approximately $69 million.[2] It is undisputed that from the date of the

_____

**2** The increase over the estimated $50 million resulted

> [b]ecause the [pension] reversion created taxable income, [therefore] Cone Mills deferred receipt until 1985 so that it could reclaim 1981 taxes paid in excess of $17 million. This inten-

6

LBO until September 1985 Cone Mills contributed stock to the ESOP worth $54,796,638. Cone Mills' payments into the ESOP did not coincide with the receipt by Cone Mills of the pension reversion and exceeded the roughly $30 million dollars that the 10%/10%/1% formula of the ESOP documents required over the first two years.

On these facts an evenly divided <u>en banc</u> court affirmed that the plaintiffs could recover "based on the incorporation of equitable estoppel principles into the federal common law of ERISA", provided that on remand the plaintiffs could establish the final element, reliance.

On remand the district court in its order of April 19, 1996 granted summary judgment in favor of the defendant on the equitable estoppel and third-party beneficiary claims. Based on its review of the law of detrimental reliance and the evidence of the first trial the court found that there was no genuine dispute of material fact as to the issue of reliance. It further found that the record "disclosed that none of the Plaintiffs can demonstrate that he or she expected to receive contribution of more of the surplus than Cone Mills actually contributed."

II. <u>Detrimental Reliance</u>

The Supreme Court has held that "[an] essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations." <u>Lyng v. Payne</u>, 476 U.S. 926, 935 (1986). Similarly, this circuit has long held that detrimental reliance on a misrepresentation is a prerequisite for restitution under a theory of equitable estoppel. See <u>Service & Training, Inc. v. Data General Corp.</u>, 963 F.2d 680, 690 (4th Cir. 1992). The reliance must take the form of a definite and identifiable action. Specifically, "[a]n estoppel arises when `one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in

_____

> tional delay in receiving the pension reversion surplus increased its value from the original estimate of $50 million to the $69 million [Cone Mills] received by December of 1985.

<u>Elmore</u>, 23 F.3d at 860, n.4.

7

reasonable reliance does an act . . . ."' Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Ins. Co., 32 F.3d 120, 127 (4th Cir. 1994) (quoting Heckler v. Community Health Servs. of Crawford, 467 U.S. 51, 59 (1984)).

Central to the district court's finding of an absence of reliance was that all the parties to the litigation believed that the surplus referred to in the communications had a value of roughly $50 million. The court agreed with, and expressly relied upon, the concurring opinion of Judge Wilkins in our en banc decision in which Judges Niemeyer and Williams joined:

> The record is unassailable that Cone Mills and the Plaintiffs acted at all times with the mutual understanding that the surplus amounted to approximately $50 million. Because in the only information available to the Plaintiffs it was estimated that the amount of the surplus was approximately $50 million, Plaintiffs could not have relied upon receipt of a substantially greater amount.

Elmore, 23 F.3d at 872 (Wilkins, J. concurring). Thus because the plaintiffs were only aware of estimates approximating the surplus at about $50 million ("approximately $50 million", "over $50 million", "$50 million or more"), the district court found the plaintiffs were precluded from claiming they reasonably expected more. Indeed, the district court found as a matter of fact that there was no causal relation between the communications regarding the retirement benefits and the buy-out - "Whatever action they [the plaintiffs] took in regard to the LBO was not directly connected with the surplus." Rather, it is apparent, as Judge Wilkins' concurrence reasoned, and the district court found, the expectation concerned the amount of money paid to the ESOP. Significantly, we note that the complaint, in its last amended form, sues for $14.2 million, which is the difference between the $54+ million paid to the ESOP Fund by Cone Mills under the 10/10/1 formula and $69 million, the value of the stock in the ERP Fund, created by Cone Mills' overpayment because of the $17 million reclaim of 1981 taxes to the United States. The tax advantage taken by Cone Mills is the root of this law suit.

An additional reason supporting our decision is that the overpayment in the ERP Fund being the property of Cone Mills, we know of

8

no reason that Cone Mills should not have taken advantage of the tax treatment. Since Cone Mills' payments into the ESOP Fund have exceeded anything promised, even the plaintiffs have tacitly acknowledged by their claim for damages of only $14.2 million that they are not entitled both to all the ERP overpayment and to the 10%/10%/1% payments. As the district court found, " . . . by the date Cone Mills' plan tax return was due for plan year 1985, Cone had committed an amount which exceeded the surplus funds returned to the company in 1985."

We find the district court's determinations of fact as to the respective states of mind of the parties are not clearly erroneous, and we affirm its finding of an absence of detrimental reliance by the plaintiffs.

The plaintiffs' contention that the district court contradicted its earlier fact finding by adopting Judge Wilkins' summary of the situation is not well taken. Judge Wilkins expressly based his synopsis above on the district court's observation in the first trial that "`I think everybody thought [the surplus] was $50 million.'" Elmore, 23 F.3d at 872. In this same vein, the plaintiffs, in their briefs and at oral argument seek to buttress their argument of reliance with the claim that the district court initially found Cone Mills had promised the plaintiffs the entire surplus, regardless of the amount. The en banc court, the plaintiffs assert, affirmed this finding. Their argument is that the affirmance precluded the district court on remand from finding, as it did, that all the parties believed the surplus was $50 million and that therefore plaintiffs could not have relied on receiving more.

We are not convinced that these earlier findings of fact preclude or render clearly erroneous the district court's subsequent findings of fact. Consistent throughout is the fact that all the parties believed the surplus was approximately $50 million, regardless of whether Cone Mills represented it would contribute the surplus in its entirety. This does not contradict the court's finding on remand that the plaintiffs did not rely on receiving more if they had not even an inkling that the surplus would in fact be a greater sum.

We also note that the district court, in both its April 19 order granting the summary judgment on the reliance issue and its final Septem-

9

ber 25 order denying the unjust enrichment claim, rejected several of the plaintiffs' theories regarding how they had relied to their detriment. We mention one of them.

The court rejected the plaintiffs' assertion that they relied to their detriment by voting for the LBO and by supporting management in its effort to persuade banks to participate in the LBO as lenders and equity owners. The court noted that the plaintiffs did not suffer any detriment either by voting for the LBO or by supporting the management.

> The surplus funds in the existing pension account did not belong to the plaintiffs. If the Plaintiffs somehow marshalled their votes and those of others to defeat the LBO, or if the Plaintiffs had expressed their dissatisfaction with the LBO to the extent the banks declined to participate, the Plaintiffs may well have succeeded in killing the LBO, but they still would not have gained title to the surplus funds in the existing pension account.

In short, even if the plaintiffs could show they relied on the representations, they had nothing to lose.

Upon review of the record and the materials of the parties we are convinced that these rulings by the district court on the plaintiffs' alternative theories are consistent with our law on estoppel and detrimental reliance, as set forth by Service & Training, Inc., 963 F.2d at 680, and Sheppard & Enoch Pratt Hospital, Inc. , 32 F.3d at 120.

III. Unjust Enrichment

On April 19, 1995 the district court allowed plaintiffs to amend their complaint to allege a claim for unjust enrichment. The district court denied the defendant's motion to dismiss the claim and "ordered the parties to appear . . . for the purpose of presenting whatever evidence or argument either side wished to submit." Neither party submitted additional evidence, relying instead on the existing record. The court then heard argument of the parties on the issue of unjust enrichment and directed the parties to file proposed findings of fact and conclusions of law.

The court considered the testimony and the credibility of the witnesses. It reviewed the briefs and exhibits, and based on the applicable law made its September 25, 1995 Finding of Facts and Conclusions of Law in which it denied plaintiffs' claim that Cone Mills had been unjustly enriched by not contributing the $14.2 million remainder of the pension surplus to the ESOP.

We agree with the district court that Provident Life & Acc. Ins. Co. v. Waller, 906 F.2d 985 (4th Cir.), cert. denied, 498 U.S. 982 (1990), plainly requires the dismissal of the unjust enrichment claim.

Waller involved a claim by an insurance company for the return of medical expenses advanced to a defendant injured in an auto accident. After receiving the advance the defendant also recovered damages from a third party exceeding the amount of the advance. A clause in the plan provided that where the insured was injured through no fault of her own the insurer would advance her medical expenses, which she would have to repay in full. Because the plaintiff insurer had not required the insuree to sign the repayment provision the district court ruled that such noncompliance with the terms of the plan barred recovery by the plaintiff under the terms of the plan. Waller, 906 F.2d at 986-87.

However, we reversed and permitted recovery under a federal common law theory of unjust enrichment in part because the facts there "fit the archetypal unjust enrichment scenario." Waller, 906 F.2d at 993. More importantly though, "the plan contract in the present [Waller] case provided for repayment of the advanced monies" and thus "the creation of a common law remedy here would further the contract between the parties and effectuate the clear intent of [the plan]." Waller, 906 F.2d at 993 (emphasis in original).

Although the plaintiffs continue in their appeal to rely on Waller which did permit an unjust enrichment claim in an ERISA action, we unambiguously reaffirmed in Waller the general rule that federal courts "must proceed cautiously in creating additional rights under the rubric of federal common law" and do not "possess carte blanche authority to `use state common law to re-write a federal statute.'" Waller, 906 F.2d at 992. The use of a federal common law theory claim of unjust enrichment in Waller was clearly the exception and

11

not the rule for ERISA cases. See Waller, 906 F.2d at 992 (citing Cummings By Techmeier v. Briggs & Stratton, 797 F.2d 383, 390 (7th Cir.), cert. denied, 479 U.S. 1008 (1986), and Van Orman v. American Ins. Co., 680 F.2d 301, 312 (3d Cir. 1982), as examples that circuits generally "decline to impose a federal common law of unjust enrichment.").

We agree with the district court that where the original plan entitled Cone Mills to the surplus, the facts in the instant case are closer to Cummings By Techmeier, 797 F.2d 383 at 390 (plan explicitly authorized the enrichment), and Van Orman, 680 F.2d at 312 (plan silent as to surplus). There is no express right in ERISA for unjust enrichment and the plaintiffs here have not established "a particularly strong affirmative indication that such a common law right would effectuate a statutory policy" of ERISA on the facts of the case. Waller, 906 F.2d at 993 (internal quotes omitted). Accordingly we affirm the district court's ruling that the plaintiffs' attempt to obtain funds outside of the plan documents on a federal common law theory of unjust enrichment must fail.

Finally, we would agree in the alternative with the district court that even if recovery under a theory of unjust enrichment were permissible here, plaintiffs are unable to make a satisfactory showing of the well-established elements of that cause of action. Quoting a sister circuit, the district court aptly noted that Cone Mills cannot be unjustly enriched where it put the surplus into the plan and where the plan specifically entitled Cone Mills to recover those funds at the termination of the plan. Craig v. Bemus, 517 F.2d 677, 684 (5th Cir. 1975) ("enrichment [is] not unjust where it is allowed by the express terms of the Plan").

IV. Varity Corporation v. Howe

In their briefs and at oral argument plaintiffs relied on the recent decision of Varity Corporation v. Howe, 516 U.S. 489 (1996), announced after the district court issued its opinion in the instant case. In Varity the plaintiffs were employees of Massey-Ferguson, Inc., a wholly-owned subsidiary of Varity Corporation. As such the plaintiffs were participants in Massey Ferguson's self-funded welfare benefit plan, which fell within the scope of ERISA. Varity, 516 U.S. 492. To

12

Varity's consternation certain divisions of Massey-Ferguson were losing large amounts of money. As a result, Varity faced the prospect of having to honor out of the pockets of Massey-Ferguson's profitable divisions the obligations of those failing divisions arising from the commitments of Massey-Ferguson's benefit plan commitment to pay medical and other nonpension benefits to employees. Varity, 516 U.S. at 493. The Court found that rather than face the repercussions of terminating those benefits, Varity reorganized according to what it misleadingly gave the optimistic label "Project Sunshine," pursuant to which it put all its "money-losing eggs in one financially rickety basket" named Massey-Combines. Varity, 516 U.S. at 493. Varity then persuaded its employees through literature and videos to switch over to the new benefits plan. While guaranteeing the same benefits, the new plan had as its underpinning only the dubious financial resources of the doomed divisions. The new Massey Combines lost $88 million in its first year and finished its second in receivership, thereby denying the employees their nonpension benefits.

The employees sued under ERISA seeking the benefits they would have received under the previous Massey-Ferguson plan. The Court found that Varity and Massey-Ferguson in their capacity as ERISA fiduciaries through deliberate deception had harmed the plan's beneficiaries, thereby violating the corporations' duties as plan fiduciaries under ERISA § 404. Varity, 516 U.S. at 506. Where there was a breach by the fiduciaries, the Court found that ERISA § 502(a)(3) permits lawsuits for equitable relief. Varity , 516 U.S. at 507-15.

Varity is consistent with our decision. Plaintiffs claim that after Varity ERISA § 502(a)(3) "provides a right of recovery on behalf of plan beneficiaries seeking appropriate equitable relief (unjust enrichment) due to an employer's having enriched itself by misleading employees." Varity, unlike here, involved the violation of a specific ERISA provision (ERISA § 404), and based on that allowed recovery as equitable relief under ERISA § 502(a)(3) where otherwise there would not have been a remedy. Varity, 516 U.S. at 507-15. In the instant case we found en banc that Cone Mills as the manager of the ERISA protected plan did not breach its fiduciary duties to the employee plaintiffs. Elmore, 23 F.3d at 863. Significantly, ERISA § 502(a)(3) does not authorize a general form of "appropriate relief", but instead more narrowly circumscribes the availability of the rem-

13

edy to situations involving the violation of an ERISA provision or the enforcement of the terms of an ERISA protected plan. <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 253 (1993). The Court has noted that ERISA § 502(a)(3)

> does not, after all, authorize "appropriate relief" <u>at large</u>, but only "appropriate relief" for the purpose of"redress[ing any] violations or . . . enforc[ing] any provisions" of ERISA or an ERISA plan.

<u>Mertens</u>, 508 U.S. at 253 (emphasis in original). Thus the absence here of a violation of the plan administrator's fiduciary duty puts this case on a different legal and factual footing than <u>Varity</u>.

Further, we find the claim in <u>Varity</u> to be rooted in a wholly distinct factual scenario. In <u>Varity</u> the Court found that Varity had engaged in "deception" by "knowingly and significantly . . . deceiving a plan's beneficiary in order to save the employer money at the beneficiaries expense". <u>Varity</u>, 516 U.S. at 506. Again in contrast, in the present appeal the district court dismissed the fraud claim, and it is not disputed that Cone Mills exceeded its contribution commitment under the ESOP formula of 10%/10%/1%.

The judgment of the district court is accordingly

<u>AFFIRMED</u>.

14