**Lee Bowles MASON, Plaintiff,**

v.

**M.F. SMITH & ASSOCIATES, INC., MFS & A Employee Benefit Plan, and UNUM Life Insurance Company of America, Defendants.**

No. Civ.A. 2:99–269–8.

United States District Court,
D. South Carolina,
Charleston Division.

June 19, 2001.

James Lee Bell, Charleston, SC, for plaintiff, Lee Bowles Mason.

Bradish J. Waring, Charleston, SC, for defendants, M.F. Smith and Associates, Inc., and MFS & A Employee Benefit Plan.

Theodore Dubose Willard, Jr., Columbia, SC, for defendant, UNUM Life Insurance Company of America.

## ORDER

BLATT, Senior District Judge.

### INTRODUCTION

This matter is before this Court for a decision on the parties' motions for judgment. The Plaintiff, who alleges that the Defendants wrongfully terminated her disability insurance payments, brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; she

seeks short term and long term disability benefits under the benefit plan provided by her former employer, M.F. Smith & Associates, Inc. ("M.F.Smith"). The Defendant, UNUM Life Insurance Company of America ("UNUM"), insured and administered the Plan. The Plaintiff explained that she named the Defendant MFS & A Employee Benefit Plan ("the Plan") as a necessary party to this action.

The Plaintiff is pursuing three causes of action: the Defendants breached the terms of the disability insurance plan by unreasonably terminating her benefits; the Defendants breached their fiduciary duties owed to her in violation of 29 U.S.C. § 1104; and the Defendants conducted unreasonable claims practices in violation of 29 U.S.C. § 1133.[1] UNUM filed a counter-claim against the Plaintiff based upon unjust enrichment seeking $21,863.50, which is the amount it alleges was overpaid to her.

This Court advised the parties that it intended to decide their claims based upon the administrative record. All parties submitted briefs arguing that the administrative record demonstrates that they are entitled to judgment in their favor. The Plaintiff had sought a jury trial and discovery outside of the administrative record; this Court had denied both requests after allowing the parties to brief and argue the issues.

### DISCUSSION

I. *Pertinent Facts.*

  A. *Plaintiff's Physical Condition and Claim for Disability.*

In February of 1993, the Plaintiff, whose date of birth is July 23, 1944, lived in New Jersey and began employment with M.F. Smith as a training consultant. In May of 1996, the Plaintiff was diagnosed with carpal tunnel syndrome of the right hand. On January 24, 1997, the Plaintiff stopped working due to surgery; she had carpal tunnel release surgery performed on her right hand by Dr. Leigh Ende, an orthopaedic surgeon. Record at pp. 192–193.[2] On April 24, 1997, the Plaintiff filed a claim for insurance disability benefits. On April 24, 1997, Dr. Ende completed UNUM's physician statement form, wherein the doctor indicated that the Plaintiff had no use of the right hand and that she should not write, type, or keyboard. Record at pp. 186–187. The Plaintiff's last visit with Dr. Ende was on June 2, 1997. On July 21, 1997, Dr. Ende completed UNUM's additional physician statement form, noting that the Plaintiff could not use her right hand and that she should not write, type, or keyboard. Record at pp. 134–135.

On July 3, 1997, UNUM wrote a letter to the Plaintiff approving her claim for disability benefits. Record at pp. 138–139. At that time, UNUM advised the Plaintiff that in order to qualify for ongoing benefits, she must continue to meet the definition of disability and that UNUM may require her to provide additional medical and/or vocational information to support her claim for benefits. *Id.* UNUM paid disability benefits to the Plaintiff from April 24, 1997, through February 23, 1998.

Around July 31, 1997, the Plaintiff moved to South Carolina, and she was treated by Dr. Stewart Haskin, Jr., an orthopaedic surgeon, in August, September, and November of 1997. Record at pp. 95–97. On January 28, 1998, UNUM re-

---

1. During oral argument held on April 9, 2001, the Plaintiff dropped her fourth cause of action for $100 a day penalty for failure to provide written plan documents.

2. Cites to "Record" herein are to the Administrative Record filed in this action by UNUM.

quested that the Plaintiff and her attending physician provide updated certification of her continued disability. As a result, Dr. Haskin completed a UNUM additional physician statement form on February 19, 1998. Record at pp. 91–94. He noted that he had first seen the Plaintiff on August 5, 1997, and that he had only seen her for a total of three times. He indicated that he did expect that she would have to undergo surgery in the future, and that he needed more information to determine her prognosis because she was last treated on November 25, 1997. As to the Plaintiff's work ability, Dr. Haskin indicated that she could not and should not perform heavy pushing, pulling, or lifting with her right hand; he further stated that she was able to perform "light duty" with no heavy pushing, pulling, or lifting with right hand from August 5, 1997, through approximately mid-January. Dr. Haskin refused to complete UNUM's physical capabilities evaluation form stating, "Give me a break. Use some common sense." Record at pp. 93–94.

Based upon Dr. Haskin's February 19, 1998, report, which was received by UNUM on February 24, 1998, UNUM wrote the Plaintiff a letter on February 25, 1998, wherein it explained that it had determined that the Plaintiff did not meet the definition of disability beginning August 5, 1997. Record at pp. 74–75. UNUM explained that her attending physician had released her to return to light duty work with the limitation of no heavy lifting, pushing or pulling with her right hand, and that a vocational review revealed that her occupation as a consultant is defined as light duty and that it does not require heavy lifting, pulling, or pushing; therefore, since August 5, 1997, the Plaintiff had been able to perform her occupation. *Id.* UNUM did invite the Plaintiff to send any recent or additional information to support her continuing disability claim.

*Id.* On February 24, 1998, UNUM had conducted a vocational review; it determined that the Plaintiff's occupation was a "training representative, education and instruction" which is light duty and requires lifting, pushing, and pulling potentially up to 20 pounds. Record at p. 90.

On March 2, 1998, the Plaintiff wrote UNUM to advise that Dr. Haskin never told her to return to light work as of August 5, 1997, and that Dr. Haskin was to contact UNUM as soon as he reviews her case. Record at p. 73. Unfortunately for the Plaintiff, Dr. Haskin did not mail any supplemental information to UNUM in support of her claim; he did though suggest that she have a functional capacity evaluation performed, which was done on March 27, 1998, at Rehability Center Conway. Record at pp. 58–68. On March 18, 1998, UNUM wrote the Plaintiff to advise that it had not received any additional medical information from her physician, and it required that such information be sent to UNUM by April 17, 1998, or it would uphold the denial of benefits. Record at p. 71. On April 15, 1998, the Plaintiff apparently faxed to UNUM her additional documents in support of her claim, which included the March 27, 1998, functional capacity evaluation, her summary, copy of latest job description, and a report from her doctor (Dr. Ende's April 24, 1997, report). Record at pp. 51–69. On April 21, 1998, UNUM's nurse reviewed her case. Record at pp. 48–50. The nurse concluded that the April 24, 1997, Dr. Ende report was of no assistance with determining the Plaintiff's current condition; the nurse further concluded that the March 27, 1998, functional capacity evaluation, which was the only "new" information, did not dispute the Plaintiff's restrictions and limitations as set forth by Dr. Haskin and that she could perform the duties of her occupation. *Id.*

On August 24, 1998, UNUM wrote the Plaintiff to explain that it had reviewed the additional information that she had sent to it but that such information was not sufficient evidence that she was disabled. Record at p. 25. UNUM explained that it had desired updated certification from her treating physician, Dr. Haskin, and that it already had the Dr. Ende report; UNUM further explained that the March 27, 1998, functional capacity evaluation showed that the Plaintiff could perform light to medium work and that it did not dispute the restrictions and limitations listed by Dr. Haskin. Thereafter, the UNUM Quality Review committee reviewed her claim. On May 12, 1998, the committee wrote the Plaintiff and explained its decision that her claim was properly denied and that benefits were properly terminated as of August 5, 1997. Record at pp. 18–19.

By May 21, 1998, the Plaintiff had retained an attorney to assist her, and he was able to convince UNUM to conduct another review of the denial of the Plaintiff's claim. Record at pp. 15–16. The Plaintiff's attorney submitted additional information to UNUM—a letter from Roberta Aronoff of M.F. Smith wherein she described the material duties of the Plaintiff's job. Record at pp. 13–14. However, on August 13, 1998, the UNUM Quality Review committee again refused to change its decision to deny benefits; UNUM explained that no medical restrictions and limitations related to computer use were shown and that the relevant inquiry was whether the Plaintiff could perform her occupation as it existed in the general economy, not the individual requirements of her job. Record at pp. 8–9.

During the oral argument hearing held on April 9, 2001, the Plaintiff's attorney explained that Dr. Haskin had written a supplemental letter concerning the Plaintiff's medical condition, but that it was inadvertently not submitted to UNUM. This Court obtained a copy of the March 4, 1998, letter written by Dr. Haskin to the Plaintiff; this letter is outside of the administrative record. The Plaintiff also attached a copy of the said letter to her Affidavit filed in this action on April 30, 2001. Dr. Haskin's March 4, 1998, letter explained that he was unable to advise whether the Plaintiff could perform specific job tasks and that would better be accomplished by a physical therapist who could perform a functional capacity evaluation. Dr. Haskin indicated that he believed that his previous recommendation for light duty work with limited use of her right upper extremity was a reasonable restriction; in other words, he did not alter his medical opinion as to her work ability.

█ The Plaintiff's Affidavit filed April 30, 2001, is also outside of the administrative record. Her affidavit does set forth certain facts based upon her personal knowledge. For example, she explains that: her job entailed creating training and development programs and that she often spent "8+ hours a day / 5+ days/ week at the keyboard"; her current treating physician is Dr. Butler; she obtained second opinions and continues to receive medical treatments; and, she has been in continual pain since 1997. However, her affidavit further sets forth medical diagnoses, statements from other individuals, and her own opinions as to why the defendants are liable to her and why she cannot currently return to work—this information, which is medical opinions, legal opinions, and hearsay, should not be a part of her affidavit because it is not factual evidence that would be admissible. *See* Fed. Rule Civ.Pro. 56(e) (details requirements for affidavits); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996) (it is proper for a court to

strike statements in an affidavit which are hearsay, conclusory, and self-serving opinions).

B.  *Policy Provisions.*

The disability policy issued by UNUM to M.F. Smith provides that:

When the Company (UNUM) receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued: 1. disability; and 2. regular attendance of a physician. The proof must be given upon request and at the insured's expense.

Record at p. 243. The policy defines "disability" and "disabled" as

because of injury or sickness: 1. the insured cannot perform each of the material duties of his regular occupation; and 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience.

Record at p. 241. The policy also explains proof of claim; it provides that "proof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for the proof." "The proof must cover: i. the date disability started; ii. the cause of disability; and iii. how serious the disability is." Record at p. 251.

The policy also provides that:

The Company (UNUM), at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim, examined by a physician or vocational expert of its choice. This right may be used as often as reasonably required.

Record at p. 251.

The policy explains that if an insured is less than age 60 at age of disability, then the maximum benefit period equals "to age 65 but not less than 60 months." Record at p. 235. UNUM is entitled to cease paying disability benefits upon the earliest of 1. the date the insured is no longer disabled; or 2. the end of the maximum benefit period. Record at p. 245 (only two categories arguably applicable here).

The policy sets forth that the policy is the complete contract, and it may be changed in whole or in part. "Only an officer or a registrar of the Company (UNUM) can approve a change. The approval must be in writing and endorsed on or attached to this policy. Any other person, including an agent, may not change this policy or waive any part of it." Record at p. 250.

II.  *The Parties' Legal Contentions.*

The Plaintiff seeks short term and long term disability benefits. The parties agree that the plan provides for "short term" benefits for a two year period when an insured cannot perform each of the material duties of her regular occupation. The parties agree that "long term" benefits are available after the first 24 months are paid where the insured cannot perform "any gainful occupation." The Plaintiff contends that she became disabled on January 24, 1997, and that she was entitled to short term benefits through January 24, 1999 (for 24 months). She claims that after the 90 day elimination period she was properly paid from April 24, 1997, through February of 1998, but that she was entitled to eleven more months of short term benefits (from March of 1998, through January of 1999). The Plaintiff was 52 years

old on January 24, 1997, the date her disability began; therefore, she claims that she is entitled to long term benefits from February of 1999, through July 23, 2009, her 65th birthday.[3]

As previously mentioned, the Plaintiff alleged three causes of action: the Defendants breached the terms of the disability insurance plan by unreasonably terminating her benefits; the Defendants breached their fiduciary duties owed to her in violation of 29 U.S.C. § 1104; and the Defendants conducted unreasonable claims practices in violation of 29 U.S.C. § 1133. The Plaintiff sets forth a host of alleged wrong-doings by the Defendants in her hopes of proving one of her causes of action. This Court has attempted to summarize the Plaintiff's alleged wrong-doings as follows: M.F. Smith, who owed the Plaintiff a fiduciary duty, jointly decided, or influenced, UNUM's determination to terminate benefits; UNUM's written notice of denial of benefits was not understandable or specific as required by law; UNUM ignored certain medical evidence which showed that the Plaintiff was disabled and it singled out portions of medical evidence which showed that the Plaintiff may not have been disabled; UNUM unreasonably concluded that the Plaintiff was not disabled as of August 5, 1997, when the evidence showed to the contrary; UNUM relied on Dr. Haskin's report, which was back-dated and incomplete; UNUM failed to send the Plaintiff to a hand specialist; UNUM communicated with M.F. Smith on several occasions; UNUM made several settlement offers to the Plaintiff; UNUM failed to have a medical doctor review her claim before it denied benefits; and UNUM's reviews were not "full and fair." [4]

The Plaintiff further contends that UNUM had a conflict of interest due to its status as administrator of the Plan, insurer of the Plan, and payor of benefits. The Plaintiff argues that this Court's review of the denial decision must be "de novo," pursuant to *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

M.F. Smith contends that pursuant to the terms of the Plan it did not have any authority to award or deny benefits, and it did not participate in the decision to terminate benefits. M.F. Smith argues that it was not a fiduciary because it had no discretion to change the terms of the Plan or to determine whether to pay benefits. The Plan argues that it is merely a necessary party and that it had no discretion to award or deny benefits.

UNUM argues that its decision to terminate benefits must be reviewed by this Court for abuse of discretion. UNUM contends that the objective medical and vocational evidence before it supported its determination that the Plaintiff could perform her regular occupation as of August 5, 1997; thus, her claim was properly denied. UNUM admits that it was a fiduciary, but it argues that monetary damages are not available for breach of fiduciary duty as a matter of law.[5] UNUM further

---

**3.** The Plaintiff did not set forth these dates for alleged short term and long term coverage in exact detail; however, this Court believes that these dates are the relevant time periods.

**4.** To the extent that this Court may have failed to mention any of the Plaintiff's allegations of wrong-doing, that is because it feels that such an allegation is either covered by the stated wrong-doings or it has no merit whatsoever.

**5.** While it is true that generally extra-contractual compensatory damages are not available due to a breach of fiduciary duty, *Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419, 424 (4th Cir.1985), the Plaintiff in her motion for judgment explained that she is not seeking "compensatory" damages, only equitable relief.

asserts a counter-claim against the Plaintiff based upon unjust enrichment; it argues that it improperly paid benefits from August 5, 1997, through February of 1998, when the Plaintiff was not disabled.

### III. *Standard of Review.*

■ The initial inquiry in an ERISA action relates to the degree of deference to be afforded by the district court to the party who denied benefits. *See Doe v. Group Hospitalization & Medical Serv.*, 3 F.3d 80, 84 (4th Cir.1993). Initially, on March 13, 2000, this Court ruled that the standard of review of the administrator's decision is modified abuse of discretion, and this Court re-affirmed its decision during a May 15, 2000, hearing. This issue had to be resolved because the Plaintiff had sought discovery and identified an expert witness[6]; the Defendants objected because they contended that this case was to be tried based solely on the administrative record.[7]

This Court held that the language of the Plan document gave UNUM discretion by implication to determine whether an insured satisfied the definition of disabled, in other words, discretion to determine eligibility for benefits. Specifically, the Plan states, when UNUM "receives proof that an insured is disabled ... the Company will pay...." Such "proof" had to establish that the insured cannot perform each of the material duties of his regular occupation. The "proof" must cover the date the disability started, the cause of disability, and how serious the disability is. Although the language of the Plan document is not a model of clarity for legal draftsmen, this Court believed that "magic words" were not necessary and that UNUM would not have to pay benefits, for example, just because one doctor indicated the insured was disabled if 50 other doctors' opinions were the opposite.[8] That is, UNUM had the discretion to determine whether the evidence submitted by the insured substantiated his claim and rendered him disabled as defined by the policy.

■ Normally, "[i]n cases where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan, the denial decision must be reviewed for abuse of discretion." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997). This standard is deferential, and "the administrator or fiduciary's decision will not be disturbed if it is reasonable...." *Id.* "Such a decision is reasonable if it is 'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Id.* (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997)).

■ However, "[t]he Supreme Court has recognized that where a plan administrator or fiduciary is vested with discretionary authority and is "operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining

---

6. The Plaintiff had sought to name C.O. Warren, Esquire, as an expert insurance and ERISA consultant. *See* Plaintiff's pleadings filed 1–25–00 and 3–31–00. During a May 15, 2000, hearing, this Court denied the Plaintiff's request for two reasons—the expert's testimony would be outside of the administrative record and his testimony would not be admissible.

7. The appropriate standard of review affects whether the district court may consider evidence that was not presented to the Plan Administrator. *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995).

8. For an example of a Plan document which is more of a model of clarity, *see Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 n. 4 (4th Cir.1999).

whether there is an abuse of discretion.' " " *Id.* at 233. Consequently, the abuse of discretion standard remains, but "the court applies the conflict of interest factor, on a case by case basis, to lessen the deference normally given under this standard of review only to the extent necessary to counteract any influence unduly resulting from the conflict...." *Id.* In short, "the court modifies that abuse of discretion standard according to a sliding scale. The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.*

This Court had ruled that the language of the Plan granted UNUM discretion but because UNUM also paid out any benefits awarded, it operated under a conflict of interest. Therefore, this Court concluded that it should review UNUM's benefit denial under a modified abuse of discretion standard; that is, for reasonableness. However, in reviewing the reasonableness of the decision, this Court must keep in mind that any benefits to be paid will come from UNUM.

This Court recognizes that certain plans require "satisfactory proof to us," and that the Fourth Circuit Court of Appeals held that such language did confer discretion to determine eligibility for benefits. *Wilcox v. Reliance Standard Life Ins. Co.,* No. 98–1036, 1999 WL 170411 (4th Cir. March 23, 1999). After this Court ruled on March 13, 2000, and May 15, 2000, that the standard of review is modified abuse of discretion, the Fourth Circuit Court of Appeals decided *Feder v. The Paul Revere Life Ins. Co.,* 228 F.3d 518, 523 (4th Cir. Sept.21, 2000), wherein it held that a plan which required "written proof should establish facts about the claim such as occur-

rence, nature and extent of the disability ..." did not grant the administrator any discretion because a statement of facts to support the claim is "simple, straight-forward and unqualified." The Fourth Circuit Court of Appeals in *Feder* distinguished plans which required "satisfactory written proof" or "proof satisfactory to us" as probably not contrary to the holding of the instant case. *Id.*

While this Court believes that the Plan language at issue here is a close call as to whether it confers discretion upon UNUM to determine eligibility for benefits, this Court still believes that it does. "Proof that an insured is disabled"—which is what UNUM's Plan required—is different from "written proof should establish facts about the claim"—which was required by the *Feder* Plan; in other words, proof to establish that the insured meets the definition of disability requires UNUM to determine whether the documents and medical tests show that the definition of disability is satisfied, whereas "written proof should establish facts about the claim" merely requires a statement of facts.

Even if this Court is incorrect in its decision to apply a modified abuse of discretion standard of review, it finds that whether it uses a modified abuse of discretion or a *de novo* review, the result is the same. As explained herein, this Court believes that UNUM properly terminated the Plaintiff's benefits when she failed to establish that her disability was continuing.

IV. *M.F. Smith's Liability to the Plaintiff.*

▮ This Court finds that there is no credible evidence in the record that M.F. Smith participated in the decision to terminate the Plaintiff's benefits. The only evidence is that UNUM made the decision to grant benefits on July 3, 1997, and then

UNUM made the decision to terminate benefits on February 25, 1998. M.F. Smith did have communications with UNUM related to the Plaintiff—M.F. Smith provided information related to the Plaintiff's material job duties, and it appears that UNUM kept M.F. Smith advised on the status of the Plaintiff's claim. However, there is no evidence that M.F. Smith requested that the Plaintiff's benefits be denied or that it gave improper information with a view toward terminating her benefits. Therefore, the Plaintiff's claim for wrongful denial of benefits must fail against M.F. Smith because M.F. Smith did not make or assist in that decision.

■ Similarly, the Plaintiff's claim that M.F. Smith owed to her, and then breached, a fiduciary duty has no merit. "Fiduciary" as used throughout ERISA is defined as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . .

29 U.S.C. § 1002(21)(A). ERISA also designates as fiduciaries persons named as fiduciaries in the plan instrument or persons identified as fiduciaries pursuant to a procedure spelled out in the plan. *See* 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1105(c)(1). Labor Department guidelines regarding the determination of fiduciary status provide further guidance. These guidelines state that persons who apply rules to determine eligibility for benefits, calculate benefits, prepare reports concerning participants' benefits, process claims, or make recommendations to others for decisions with respect to plan administration are not fiduciaries under ERISA. 29 C.F.R. § 2509.75–8, D–2 (2001); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 455 (6th Cir.1991) (purely ministerial functions do not lend to fiduciary status). Applying these standards, courts have held that professionals who render specialized services to employee benefit plans are not ERISA fiduciaries unless there is a showing of discretionary control as spelled out in 29 U.S.C. § 1002(21)(A). *Toomey v. Jones,* 855 F.Supp. 19, 23 (D.Mass.1994) (collecting cases).

The Plaintiff alleges that it is undisputed that M.F. Smith was a fiduciary under the Plan. This Court finds that the Plan documents do not designate M.F. Smith as any sort of fiduciary. Further, M.F. Smith was not required to, and did not, render any discretionary authority over the Plan's assets or management of the Plan, nor did M.F. Smith have any discretion to administer the Plan. M.F. Smith's providing information concerning the Plaintiff's job duties appears to be the type of ministerial activity contemplated by the statutory definition and the Labor Department regulations as non-fiduciary. Accordingly, M.F. Smith, as well as the Plan, are entitled to judgment in their favor.

## V. *UNUM's Liability to the Plaintiff.*

■ It appears that the crux of the Plaintiff's complaint against UNUM is pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits allegedly due to her under the terms of her plan. Under the terms of the Plan, the burden of proof was on the Plaintiff to prove that she was disabled and that her disability was continuing.

Dr. Ende's July 21, 1997, disability form did indicate that the Plaintiff could not use her right hand at all; notably, Dr. Ende last saw the Plaintiff on June 2, 1997. However, once UNUM requested an updated certification of the Plaintiff's disability on January 28, 1998 (six months after Dr. Ende's last report dated July 21, 1997), it was incumbent upon the Plaintiff to have her treating physician verify that she still could not use her right hand and that she should not write, type, or keyboard.

▮ The Plaintiff asked her treating physician, Dr. Haskin, to send in a completed disability form to UNUM. Dr. Haskin, however, did not indicate that the Plaintiff had work restrictions as severe as Dr. Ende had indicated.[9] In fact, Dr. Haskin's listed work restrictions when compared with the requirements of the Plaintiff's occupation as it existed in the general economy demonstrated that the Plaintiff was not restricted from performing her occupation. Dr. Haskin believed that she had the same restrictions from his first visit with her on August 5, 1997. Faced with this supposed medical evidence of the Plaintiff's continued disability, UNUM certainly was reasonable in finding that the Plaintiff had failed to show that she continued to be disabled, even considering that any benefits to be paid would come from UNUM. The fact that Dr. Haskin had not completed all parts of UNUM's form is of no consequence since he did complete the pertinent portions related to the Plaintiff's physical restrictions.

▮ The Plaintiff could have submitted other medical evidence from other attending doctors to demonstrate that she could not use her right hand and that she should

not write, type, or keyboard, especially given that UNUM requested additional evidence to support her claim. *See Lown v. Continental Cas. Co.*, 238 F.3d 543 (4th Cir.2001) (disability benefits properly denied under *de novo* review because the Plaintiff did not prove that she was disabled). The Plaintiff argues that UNUM should have sent her to another doctor at UNUM's expense to determine the extent of the Plaintiff's hand problems. UNUM had authority to do that under the policy, but it was not required to do so. The evidence before UNUM was sufficient to show that the Plaintiff could perform light work as of August 5, 1997; therefore, UNUM had no duty to attempt to obtain evidence to support the Plaintiff's claim for benefits. *E.g., Elliot v. Sara Lee Corp.*, 190 F.3d 601, 608 (4th Cir.1999). Moreover, UNUM's vocational review was conducted using the occupation "training representative, education and instruction" which was reasonable given the job description provided by M.F. Smith for the Plaintiff's last job as a Senior Training Consultant.

▮ The Plaintiff did submit "new" medical evidence—a March 27, 1998, functional capacity evaluation—and UNUM did consider it; however, that evaluation did not conflict with Dr. Haskin's restrictions which he set for the Plaintiff. In fact, that evaluation showed that the Plaintiff could perform light to medium work. UNUM was reasonable to conclude that this medical evidence did not support the Plaintiff's continued disability. As to the Plaintiff's other "new" evidence—Dr. Haskin's March 4, 1998, letter—this Court finds that it should not be considered as it is outside of the administrative record. Even if this Court was to consider Dr.

---

9. As previously mentioned in the factual section, Dr. Haskin indicated that the Plaintiff was able to perform "light duty" with no heavy pushing, pulling, or lifting with her right hand.

Haskin's letter dated March 4, 1998, that letter does not indicate that Dr. Haskin considered the Plaintiff to be disabled nor did he indicate what job tasks she could and could not perform. Dr. Haskin believed that his previous recommendation for light duty with limited use of the Plaintiff's right upper extremity was a reasonable restriction. *See* Plaintiff's Affidavit, letter attached as Exhibit.

■ The Plaintiff states in her affidavit that she has received second opinions and that she is being treated by other doctors. However, this Court finds that her affidavit should not be considered in its entirety as it is outside of the administrative record. Even if this Court was to consider the admissible portions of her affidavit, there is no evidence contained in her affidavit or any other admissible medical evidence in the record to show that other doctors believed that after August 5, 1997, to January of 1999, the Plaintiff had physical work restrictions which would render her disabled under the "short term" provision of the policy. Moreover, there is no admissible evidence contained in her affidavit or any other admissible medical evidence in the record to show that from February, 1999, to date, the Plaintiff cannot perform job duties of any gainful occupation, as defined by the "long term" provision of the policy. The Plaintiff's self-serving statements as to why she cannot work are not appropriate proof of disability.

■ Even if Dr. Ende's July 21, 1997, report conflicted with Dr. Haskin's February 19, 1998, report, which assumes that the Plaintiff could not reasonably have recovered that much during the two months between her June 2, 1997, and August 5, 1997, office visits, UNUM could properly deny disability benefits if it reasonably relied on one of the reports over the other report. *See Elliott,* 190 F.3d at 606. It is

the administrator's duty to resolve conflicts in medical reports. *Booth v. Wal–Mart Stores, Inc.,* 201 F.3d 335, 345 (4th Cir.2000).

■ Based on the evidence before it, this Court finds that UNUM's decision to terminate the Plaintiff's disability benefits on February 25, 1998, the date UNUM obtained Dr. Haskin's report, was the result of a deliberate, principled reasoning process, and the decision is supported by substantial evidence. Furthermore, if this Court were to decide *de novo* whether the Plaintiff was entitled to disability benefits, based on the admissible evidence in the record and even considering the other evidence submitted which is outside of the administrative record, it finds that the Plaintiff failed to demonstrate a continued short term disability after UNUM requested an updated certification. This Court further finds that the Plaintiff failed to demonstrate based upon any admissible evidence in the record or any other evidence submitted which is outside of the administrative record that she is disabled under the long term provision of the policy.

■ As to the Plaintiff's claim that she did not receive a full and fair review, this Court finds that UNUM did provide a full and fair review to the Plaintiff of her denial of benefits. UNUM conducted several reviews and each time considered the evidence that the Plaintiff had submitted; however, none of the evidence demonstrated that the Plaintiff continued to be disabled under the terms of the policy. UNUM's denial letter was also sufficient under the law; it met the requirements of detailing its decision and reasoning, describing what additional information was needed, and explaining how the Plaintiff could appeal. Therefore, UNUM did not breach its duty under 29 U.S.C. § 1133.

Moreover, even if a procedural violation had occurred, in this case such a violation did not cause any substantive harm so the Plaintiff would not be entitled to relief for a breach of § 1133. *Sedlack v. Braswell Serv. Group Inc.*, 134 F.3d 219, 225 (4th Cir.1998).

While UNUM did owe the Plaintiff a fiduciary duty to properly administer the Plan by discharging its duties with respect to the Plan solely in the interest of the plan participants, this Court does not find any evidence that UNUM breached its fiduciary duty owed to the Plaintiff or that UNUM conducted unreasonable claims practices in handling the Plaintiff's claim. *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 862 (4th Cir.1994). Accordingly, UNUM is entitled to judgment in its favor on the Plaintiff's claims.

## VI. *UNUM's Counter-claim against the Plaintiff.*

UNUM argues that from August 5, 1997, through February 23, 1998, it paid the Plaintiff disability benefits but that on February 24, 1998, UNUM obtained information that the Plaintiff had not continued to be disabled during that time period— Dr. Haskin's report had indicated that since August 5, 1997, the Plaintiff could perform light duty with no heavy pushing, pulling, or lifting with her right hand. UNUM asks this Court to award it equitable relief, restitution in the amount of $21,863.50, which is the amount it alleges was overpaid to the Plaintiff during that time period. UNUM relies on *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 994 (4th Cir.1990), where the Fourth Circuit Court of Appeals recognized that in some circumstances it is appropriate for a federal court to "weave into the statutory fabric of ERISA the federal common law remedy of unjust enrichment."

The *Waller* court permitted Provident insurance company to recoup $5,922.53 in medical expenses which it had advanced to Waller, the plan participant. The policy there provided that Provident would not cover medical benefits when the injury to the insured occurs through the act or omission of another person; however, the policy provided that Provident may advance medical expenses for which a third party is liable if the insured signed an agreement to repay Provident in full any payments advanced. *Id.* at 986. For some unknown reason, Waller had never signed the agreement to repay, but Provident advanced her the money regardless. Thereafter, Waller obtained damages from the third party in excess of what Provident had paid her. It was under these circumstances that the Fourth Circuit Court of Appeals held that creation of a common law remedy of unjust enrichment would further the contract between the parties. *Id.* at 993.

This Court believes that the *Waller* case turned, in part, on the fact that Waller was clearly aware of the plan's provision for repayment when she requested and then accepted the benefits. Notably, the *Waller* court distinguished certain cases which had refused to impose a federal common law unjust enrichment claim on the ground that the plans in those cases either explicitly authorized the enrichment or was silent on the issue. The Fourth Circuit Court of Appeals in a subsequent case dismissed an unjust enrichment claim as being unavailable as a matter of law, and it stated that "[t]he use of a federal common law theory claim of unjust enrichment in *Waller* was clearly the exception and not the rule for ERISA cases." *Elmore v. Cone Mills Corp.*, 187 F.3d 442, 449 (4th Cir.1999).

This Court examined the policy in this case for provisions related to overpay-

ments by UNUM. The policy provides that an insured's monthly benefit will be deducted by the amount of other income benefits. Other income benefits includes payments from the Social Security Administration. The amount of Social Security income will be estimated and withheld from the disability benefits unless the insured signs an agreement that she promises to repay UNUM any overpayment caused by an award received from the Social Security Administration. Other than those provisions regarding repayment to UNUM, this Court could not find any provision in the Plan document which permits UNUM to seek repayment of monies mistakenly paid to an insured as disability benefits.[10] This Court finds that the policy is silent on the issue of whether UNUM expected to be repaid disability benefits mistakenly paid to an insured.

This Court finds that there is no evidence in the record that Ms. Mason had knowledge during the time she received her disability benefits between August 5, 1997, and February, 1998, of UNUM's asserted right to be repaid benefits which it mistakenly paid; therefore, Ms. Mason is unlike the beneficiary in *Waller*. *See Health Cost Controls v. Wardlow*, 825 F.Supp. 152, 158 (W.D.Ky.1993). Further, Ms. Mason was paid disability benefits covered under the policy provided that she was disabled, whereas the beneficiary in *Waller* was paid monies not owed pursuant to the policy—the payment was merely an advance. Moreover, under the circumstances of this case, this Court finds that the creation of a common law remedy of unjust enrichment would not further the contract between the parties. Accordingly, this Court believes that dismissal of the unjust enrichment claim is proper as a matter of law.

Even if recovery under an unjust enrichment claim was permissible in this case, UNUM failed to make a satisfactory showing of the elements of that cause of action. Pursuant to *Waller*, UNUM must show: (1) it had a reasonable expectation of payment; (2) the defendant should have reasonably expected to pay; or (3) that society's reasonable expectations of person and property would be defeated by nonpayment. *Waller*, 906 F.2d at 993. Because no provision in the Plan document permits UNUM to seek repayment of monies mistakenly paid to an insured as disability benefits, the policy language does not create any reasonable expectation of repayment to UNUM by an insured. UNUM could not have reasonably expected to receive a refund in the event it retroactively discovered that an insured was not disabled, especially since it did not advise the insured in advance that it would seek such repayment. This Court further finds that it is reasonable for an insured who receives a check in the mail for her disability benefits, and who actually believes that she is disabled (as the Plaintiff does), to expect that money is hers to spend; the Plaintiff insured should not have expected that she would be called upon to repay that money.

This Court finds that it is not unjust for the Plaintiff to keep the overpayments totaling $21,863.50. It is enrichment, but it is not unjust. On July 3, 1997, UNUM determined that the Plaintiff had become disabled beginning January 24, 1997; UNUM waited until January 28, 1998, to request updated certification of the Plaintiff's continuing disability. Had UNUM sought updated certification sooner, then it likely would not have enriched the Plaintiff with certain payments. However, UNUM should bear that risk under a reasonable expectation analysis; society's reasonable

10. UNUM's counsel could not point to any    such policy provision.

expectations of person and property would not be defeated by denying UNUM's claim.

## CONCLUSION

Based on the foregoing, it is

ORDERED that all of the Defendants are entitled to judgment in their favor on the Plaintiff's claims; that the Defendant Mason is entitled to judgment in her favor on the Plaintiff UNUM's counter-claim; each party shall bear their own costs and attorney's fees; and the Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**